NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12149

COMMONWEALTH  vs.  WILLIAM OBERLE.


Norfolk.     December 8, 2016. - February 28, 2017.

Present:  Gants, C.J., Botsford, Lenk, Hines, Gaziano, Lowy, &
Budd, JJ.


Assault and Battery.  Kidnapping.  Jury and Jurors.  Practice,
    Criminal, Jury and jurors, Challenge to jurors.  Evidence,
    Prior misconduct.



Indictments found and returned in the Superior Court
Department on September 17, 2014.

The cases were tried before Raymond J. Brassard, J.

The Supreme Judicial Court granted an application for
direct appellate review.


Merritt Schnipper for the defendant.
Michael McGee, Assistant District Attorney, for the
Commonwealth.


BOTSFORD, J.  The defendant, William Oberle, appeals from

three assault and battery convictions, G. L. c. 265, § 13A (a),

and a kidnapping conviction, G. L. c. 265, § 26, arising out of

an incident of domestic violence.  The defendant argues that the

trial judge erred in denying his peremptory challenge of a female juror and in admitting prior bad act evidence. We reject both arguments and affirm the judgments of conviction of assault and battery. The defendant also argues that there was insufficient evidence to support his kidnapping conviction. We are unpersuaded, and affirm that conviction.

1. Background. a. Facts. Because the defendant challenges, in part, the sufficiency of the trial evidence, we summarize it in the light most favorable to the Commonwealth. Commonwealth v. Latimore, 378 Mass. 611, 676-677 (1979). The defendant and the victim began a romantic relationship in the summer of 2013. The defendant made the victim feel uncomfortable and insecure, and prevented her from looking at or speaking with others in public. In February, 2014, the victim went to a hospital emergency room with bruising to her ears, face, neck, and arm after the defendant had beaten and strangled her. As he wrapped his hands around her neck during that incident, the defendant told the victim he was going to kill her.

The couple soon reconciled and moved together to the home of the defendant's daughter in Dedham. They occupied a bedroom in the basement of the house, which had a private back door and

a shared exit through the first-floor kitchen.[1]  Although their relationship briefly stabilized following the move, the defendant's physical abuse of the victim resumed, and the defendant struck the victim's face on multiple occasions.  The victim struggled with alcohol and was intoxicated daily during this period.

On July 4, 2014, the defendant and victim argued because the defendant refused to return the victim's bank card, an act she took as a sign that he was again using drugs.  Following the argument, the defendant left; the victim stayed home, drank several beers, and went to bed.  When the defendant returned to the house after midnight, the argument escalated.  The defendant punched the victim's face, chest, and legs.  He held her down and choked her, saying he would kill her.  The victim was unable to call for help because the defendant had taken her cellular telephone the day before.

The victim lost consciousness for an unspecified period of time.  When she woke up, the defendant was still on top of her, shouting, with his hands around her neck.  The victim was unsure how she got away or how much time had passed, but recalled that there was daylight when she ran out the back door of the basement.  Barefoot, bleeding, and wearing only her pajamas, she

---

[1] The defendant's daughter and grandson lived on the first floor.  A roommate also lived upstairs.

ran across the street and hid in the garage of a rental car business. The defendant initially remained in the basement bedroom, but the victim saw him walk down the driveway as she waited for the business to open so that she could telephone the police.

Matthew Kronk arrived to open the rental car business at approximately 7:30 A.M. The victim approached Kronk to ask for help, and he telephoned 911. Paramedics and Dedham police officers responded to the scene and brought the victim to the hospital, where her injuries were photographed. They included bruising to the arm and left eye, bleeding in the nose and ear, and neck abrasions. The victim's treating physician opined that these injuries were consistent with multiple blows to the face and body, and with strangulation.

b. Procedural history. The defendant was indicted on charges of attempted murder, kidnapping, witness intimidation, and four counts of assault and battery. At the close of the Commonwealth's case, the defendant moved for a required finding of not guilty on the charges. The judge allowed the motion in relation to the charge of witness intimidation but denied it for the remaining charged crimes. The defendant renewed his motion at the close of the defense case, and it was again denied.

The jury acquitted the defendant of attempted murder and one of the assault and battery charges, and convicted him of

kidnapping and three counts of assault and battery.[2] The
defendant filed a timely notice of appeal, and we allowed his
application for direct appellate review.

2. Discussion. a. Peremptory challenges. We begin by
summarizing what happened at trial during jury selection. After
directing a series of questions to the jury venire as a group
and noting their answers, the trial judge conducted an
individual voir dire of every prospective juror called. Both
counsel and the defendant were present at sidebar for the
judge's individual juror questioning, and the judge required
counsel to raise any peremptory challenge to a prospective juror
immediately after the judge completed his questioning.

The judge excused for cause the first prospective juror
called (juror no. 1), a woman, because her close friend's recent
experience with domestic violence was likely to influence her
thinking. Juror no. 2, a man, was seated. The defendant
exercised a peremptory challenge to juror no. 3, a woman who was
a college sophomore. Juror no. 4, a woman with at least twenty-
three years' professional experience, was seated without
challenge. The judge excused jurors nos. 5 and 6, both of whom

---

[2] The judge sentenced the defendant to from three and one-
half to five years in State prison on the kidnapping conviction,
and to ten years' probation on each of the assault and battery
convictions; the probationary sentences were concurrent with
each other, from and after the defendant's prison sentence on
the kidnapping conviction.

were women whose family or friends had been victims of domestic violence. The defendant exercised his second peremptory challenge to juror no. 7; she was a college student studying criminal justice who had "lost faith" in "the system."

The defendant exercised his third peremptory challenge to juror no. 8, the seventh woman out of the first eight prospective jurors called. The judge allowed the challenge. Before doing so, the following exchange between the judge and the defendant's counsel took place:

> The judge: "Counsel, I think there's a pattern of excusing female jurors. This is the second one or the third; one of them I think I understand. The juror we had a few moments ago spoke about knowing people in prison and the like. But I think there's a clear pattern here of excusing younger female jurors. [Juror no. 8], like the others you excused, they were all in their twenties, perhaps early thirties at the oldest. And I'm going to make that finding and require you give me a reason."
>
> Defense counsel: "Okay. I'd suggest that I have had no choice but to excuse female jurors because that's all we've had up here except we had one man up here so far. We have excused one because we had clear questions about her ability to be unbiased; she said so right in the report. The other two my client did not feel comfortable with. We have a lot of female -- "
>
> The judge: "'Not feeling comfortable' is not going to do it."
>
> Defense counsel: "Peremptories. It's a peremptory challenge. If it was an even number of men and women that we have been interviewing, but we've only interviewed, what -- so we're interviewing -- we've allowed one on. So I'd suggest that we've been completely unbiased in the way that we've chosen. We had no alternative other than to excuse women because that's all we've been faced with is women, so -- "

The judge:  "There's no requirement to excuse good jurors, whatever their gender. . . .  I think there's a marked pattern, [defense counsel].  I'm going to give you -- really lean over backwards and give you the benefit of the doubt with this juror.  But that will be the last one, because what you have given me by way of explanation is wholly inadequate.  I don't doubt that you're being truthful; I have no reason to doubt that.  But the substance of what you've explained is that there is no substance to it, none whatsoever."

The next seven prospective jurors called were five men and two women.  Of this group, two men and one woman -- a person with fourteen years' experience as an elementary school teacher -- were seated without challenge.  The judge excused one man due to a scheduling conflict, and the Commonwealth exercised peremptory challenges with respect to two other men.  The defendant sought to exercise a peremptory challenge to the next prospective juror called, juror no. 15, a thirty-eight year old woman with fifteen years' experience as a teacher and then a teacher recruiter for a company offering early childhood education and care.  When the judge asked the juror about her exposure to domestic violence, she stated that she had filed three reports of child abuse during her time as a teacher.  This exchange followed:

Defense counsel:  "We will exercise a peremptory challenge based on her answers to your questions, based on what she has done for [fifteen] years, based on the fact she saw 51As on three occasions, giving her intimate knowledge of that whole aspect of the world of a cycle -- "

The judge:  "There's no 51A issue here."[3]

Defense counsel:  "No, but that is a field that deals with abuse, deals with aggression, deals with violence within families, within relationships, and that is something she has intimated now she has a very good knowledge of.  It's a knowledge well enough that she has filed 51As on three occasions.  And that's the basis of our -- and note that she's a [thirty-eight year] old lady, so she's older than just a young girl.  And I think our challenge is merited."

The judge:  "I'm going to deny the exercise of that peremptory challenge.  There is a pattern here.  I think that the defendant and counsel are seizing upon the background of this particular juror, and I am not persuaded that this is anything other than a pretext, respectfully; and I think it's an effort to keep females off the jury. It's a distinct pattern.  And I have examined the juror with care, perceive absolutely no basis or substance for this challenge.  So I'm going to disallow it."

Juror no. 15 was seated over the defendant's objection and participated in the jury's deliberations.

There were ten men and five women remaining in the venire. Of this group, the judge excused a man who knew one of the witnesses, a man who believed people accused of domestic violence were guilty, and a man who admitted to bias in favor of police.  The judge also excused a woman who was the director of a residential program for women with addictions, explaining, "[T]here may be some evidence to the effect that the alleged victim, who is a female, had or may have had some sort of drinking, alcohol issue."  The defendant exercised his three

---

[3] General Laws c. 119, § 51A, requires mandated reporters, including teachers like juror no. 15, to report suspected child abuse or neglect to the Department of Children and Families.

remaining peremptory challenges to two men and one woman in this group.  The judge allowed the defendant's challenge of the woman (as well as the men), noting that women had been seated since the blocked challenge to juror no. 15.

From a jury venire composed of sixteen men and fourteen women, eight men and six women were seated; seven male and five female jurors ultimately deliberated.

The defendant argues that the trial judge's denial of his peremptory challenge to juror no. 15 constituted error, and because the error was structural, it entitles him to reversal of his convictions.  Further, he argues that given the absence of detailed findings, the judge's ruling warrants no deference on review.  The Commonwealth contends that the judge acted within his considerable discretion in denying the defendant's challenge and also made sufficient findings in support of that denial.  The record shows that the defendant's arguments are not without some basis, but we conclude that the defendant's claim for reversal must fail.

"Peremptory challenges cannot be used 'to exclude members of discrete groups solely on the basis of bias presumed to derive from that individual's membership in the group.'" Commonwealth v. Rodriguez, 431 Mass. 804, 807 (2000), quoting Commonwealth v. Soares, 377 Mass. 461, 488, cert. denied, 444 U.S. 881 (1979).  A peremptory challenge may not be based on a

prospective juror's gender, because gender is a discrete grouping defined in art. 1 of the Massachusetts Declaration of Rights, as amended by art. 106 of the Amendments to the Massachusetts Constitution.  Soares, supra at 486 & n.29.  See Rodriguez, supra.  However, age is not a discrete grouping defined in the Constitution, and therefore a peremptory challenge may permissibly be based on age.  Commonwealth v. Samuel, 398 Mass. 93, 95 (1986).  Peremptory challenges are presumed to be proper, but that presumption may be rebutted on a showing that (1) there is a pattern of excluding members of a discrete grouping and (2) it is likely that individuals are being excluded solely on the basis of their membership in that group.  Commonwealth v. Issa, 466 Mass. 1, 8-9 (2013), and cases cited.  Commonwealth v. Maldonado, 439 Mass. 460, 463 (2003), and cases cited.  The burden of making a prima facie showing of a discriminatory pattern "ought not be a terribly weighty one." Maldonado, supra at 463 n.4.

Once such a pattern is found, the burden shifts to the party exercising the challenge to provide a "group-neutral" explanation for it.  Maldonado, 439 Mass. at 463.  The judge must then determine whether the explanation is both "adequate" and "genuine":

> "An explanation is adequate if it is 'clear and reasonably specific,' 'personal to the juror and not based on the juror's group affiliation,' . . . and

> related to the particular case being tried. . . . An
> explanation is genuine if it is in fact the reason for
> the exercise of the challenge. . . . An explanation
> that is perfectly reasonable in the abstract must be
> rejected if the judge does not believe that it
> reflects the challenging party's thinking."
> (Citations omitted; emphases in original.)

Id. at 464-465.

An erroneous denial of a peremptory challenge is a structural error, requiring reversal without a showing of prejudice. See Commonwealth v. Hampton, 457 Mass. 152, 164-165 (2010), and cases cited. A trial judge has considerable discretion in ruling on whether a permissible ground for the peremptory challenge has been shown, and we will not disturb that ruling so long as it is supported by the record. Rodriguez, 431 Mass. at 811.

Here, it is true that when the judge first found a discriminatory pattern at the point the defendant challenged juror no. 8, seven of the eight prospective jurors who had been called had been women, and the pattern he identified was based on only two prior strikes of "young women." The judge's articulated reason for finding a pattern is troubling in that, as we previously noted, "[t]here is no constitutional basis for challenging the exclusion of young persons." Samuel, 398 Mass. at 95. Compare Commonwealth v. Jordan, 439 Mass. 47, 62 (2003) (challenges based on combination of race and gender violate art. 12 of Massachusetts Declaration of Rights). But even assuming

for argument that there was no basis for finding an impermissible pattern at the time the judge declared one, the judge did not reject the defendant's peremptory challenge to juror no. 8.  Rather, the judge allowed the challenge, and the juror was excused.  By the time the defendant exercised another peremptory challenge -- to juror no. 15, a thirty-eight year old woman -- all three of the defendant's previous peremptory challenges had been to women, and juror no. 15 would have been the fourth out of four.  And, significantly, the judge's statements concerning the defendant's proffered challenge to juror no. 15, quoted supra, indicate with reasonable clarity that the pattern the judge found to exist was a pattern of challenging women (his reference was to "females") as a group, not a pattern based solely on young women -- i.e., age.  Compare Samuel, supra.  Even though the venire contained a substantial number of women and two women had previously been seated as jurors, we are not persuaded that the judge abused his broad discretion in finding an impermissible pattern at the point he rejected the defendant's peremptory challenge to juror no. 15. See Rodriguez, 431 Mass. at 811 (that women were disproportionately represented in venire, had been seated on jury, and remained in venire did not preclude judge from finding that defendant lacked gender-neutral reason for peremptory challenge).

Irrespective of when a pattern is initially found to exist, once it occurs, the critical point of focus for the trial judge as well as the appellate court turns to the adequacy and genuineness of the explanation proffered by the party seeking to exercise the peremptory challenge. See Maldonado, 439 Mass. at 465. Because a judge must find that both the adequacy and genuineness prongs of the explanation are satisfied in order to allow a peremptory challenge once a pattern has been identified, see id. at 464-465, the judge's determination that either one falls short is sufficient to support its denial. See Commonwealth v. LeClair, 429 Mass. 313, 323 (1999) (affirming judge's disallowance of peremptory challenge after judge found it disingenuous). Here, unfortunately, the judge did not make specific findings concerning the adequacy of the defendant's proffered reason for challenging juror no. 15. But even if we were to assume that the proffered explanation that juror no. 15's experience as a mandated reporter of child abuse qualified as an individualized, group-neutral, and adequate explanation for the challenge, the judge was not thereby obligated to accept that explanation as genuine. See Maldonado, supra at 465. The judge pointed out that there was no child abuse at issue in this case, specifically found that the defendant's proffered explanation for the challenge was a pretext for keeping women off the jury, and denied the challenge for that reason. See

Commonwealth v. Curtiss, 424 Mass. 78, 82-83 (1997) (affirming judge's disallowance of peremptory challenge of African-American juror whose spouse worked for State child welfare agency, where case did not concern child abuse). Although the judge clearly should have addressed the adequacy of the defendant's proffered reasons for challenging juror no. 15, we conclude that the judge did not abuse his discretion in finding a lack of genuineness.[4] We thus affirm the judge's denial of the defendant's peremptory challenge to juror no. 15.

b. Sufficiency of the evidence of kidnapping. The defendant claims that there was insufficient evidence to support his conviction of kidnapping under G. L. c. 265, § 26. Specifically, he argues that the Commonwealth failed to prove any act of confinement or restraint beyond that inherent in the underlying assaults and batteries. In reviewing this claim, we consider the evidence introduced at trial in the light most favorable to the Commonwealth, and determine whether a rational

---

[4] We emphasize again that it is important that a judge make the required separate and specific findings as to the adequacy and genuineness of an explanation for the exercise of a peremptory challenge once a pattern of improper exclusion has been made. Because an erroneous denial of a peremptory challenge constitutes structural error, Commonwealth v. Hampton, 457 Mass. 152, 164 (2010), it is critical that the record on appeal reflect the judge's reasoning in order to allow for appropriate appellate review. Cf. Commonwealth v. Issa, 466 Mass. 1, 11 n.14 (2013) (discussing importance of findings in reviewing judge's allowance of prosecutor's challenge to African-American juror).

trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Latimore, 378 Mass. at 676-677.  We conclude that the Commonwealth offered sufficient evidence of kidnapping independent of the assaults and batteries, and accordingly, we affirm the defendant's kidnapping conviction.

To prove a person guilty of kidnapping, the Commonwealth must establish beyond a reasonable doubt that the person "without lawful authority, forcibly or secretly confine[d] or imprison[ed] another person within this commonwealth."[5]  G. L. c. 265, § 26.  "[T]he essential element of kidnapping is not the level of violence but rather the defendant's forcible or secret confinement or imprisonment of the victim against [her] will." Commonwealth v. Robinson, 48 Mass. App. Ct. 329, 334 (1999). "Confinement is 'broadly interpreted to mean any restraint of a person's movement.'"  Commonwealth v. Boyd, 73 Mass. App. Ct. 190, 193 (2008), quoting Commonwealth v. Lent, 46 Mass. App. Ct. 705, 710 (1999).  See Commonwealth v. Dykens, 438 Mass. 827, 841 (2003).  It is not required that the Commonwealth prove a specific intent to confine, Commonwealth v. Ware, 375 Mass. 118,

---

[5] In contrast, assault and battery requires that the defendant intentionally commit a "harmful [or] offensive touching[]" of the victim, without justification or excuse.  See Commonwealth v. Burke, 390 Mass. 480, 482 (1983) (discussing common-law crime of assault and battery, as codified at G. L. c. 265, § 13A).

119-120 (1978), but the act of confinement must be independent of the other crimes at issue, Boyd, supra at 195. As the Appeals Court has explained:

> "The consistent rule of the decisions is that confinement, detention, or restraint exceeding the conduct necessary for commission of the other charged offenses constitutes independent, not incidental, conduct. In the generic scenario of these cases, the perpetrator has deceived or forced the victim into confinement enabling the accomplishment of a grievous crime against the person of the victim. In those circumstances, the confinement is facilitation, and not duplication, of the further offense.

> "The distinction is not a technicality. It embodies the reality of the separate and specific injury inflicted upon the trapped victim as a captive: the frustration and indignity of detention; the experience of vulnerability and helplessness; and the dread of an unknown ending."

Id. See Commonwealth v. Rivera, 397 Mass. 244, 253-254 (1986) (declining to consider "confinement or asportation used as a means to facilitate the commission of [the charged rape and robbery] as merged in the substantive crime").

This case presents no basis for a departure from these principles. Indeed, the evidence of confinement amounts to just the "separate and specific injury" contemplated in Boyd. Here, a rational juror could have found that the defendant told the victim he was going to kill her, held her down by the throat, and ignored her plea that he stop, and that she was unable to call for help and attempted to leave but could not. The victim's testimony also reasonably permitted a finding that she had experienced difficulty breathing and ultimately lost

consciousness, and that when she regained consciousness, the defendant was still on her, shouting, with his hands around her neck.  Finally, a rational juror could have concluded that the victim attempted to leave the shared bedroom but for some time could not, and that this confinement was protracted:  although it was dark when the entire incident began, it was light by the time the victim escaped, barefoot, injured, and wearing only her pajamas.

Particularly where "[a]ny restraint of a person's liberty" has long been adequate (citation omitted), Dykens, 438 Mass. at 841, the evidence here of confinement independent of the other charged crimes was sufficient to support the defendant's conviction of kidnapping.  See Commonwealth v. Brown, 66 Mass. App. Ct. 237, 242 (2006) (evidence of confinement sufficient to support kidnapping component of aggravated rape charge where defendant poked victim with stick, threatened to kill her, and prevented her from leaving); Lent, 46 Mass. App. Ct. at 710 & n.5 (evidence sufficient to support kidnapping conviction where defendant showed victim a gun, pulled her by her jacket, and constrained her by holding onto her backpack while they walked toward his truck, even where victim was able to escape before being forced into vehicle).

c.  Prior bad act evidence.  Before trial, the Commonwealth moved in limine to admit evidence, including photographs, of the

February, 2014, beating of the victim by the defendant. Defense counsel argued that this was prior bad act evidence that would be unfairly prejudicial and inflame the jury. The judge, however, allowed the evidence as illustrative of "the entire relationship between the two." At trial, the Commonwealth introduced, over the defendant's objection, testimony from the victim and Worcester police officer Jose Ortiz about the February, 2014, incident, and three photographs of bruising on the victim's face, neck, and arm resulting from the incident. Each photograph was enlarged to poster size and displayed on easels facing the jury during the victim's testimony. Seventeen photographs of the July, 2014, incident were also admitted, with ten similarly enlarged and displayed alongside the three photographs of the February incident.

The judge gave a limiting instruction at the close of the victim's testimony, telling jurors they were permitted to consider evidence of the February, 2014, incident only "insofar as [they] find it bears on . . . the relationship between the witness and the defendant, the intent with respect to the events at issue in this case, the motive, the absence of a mistake, or the absence of accident." He repeated this instruction in his final charge.

The defendant argues that the judge erred in admitting evidence of the prior incident of alleged domestic violence

between him and the victim because the evidence was of the defendant's prior bad acts and the probative value of that evidence was outweighed by its unfairly prejudicial effect. We disagree.[6]

Evidence of prior bad acts is not admissible to show a defendant's bad character or propensity to commit the charged crime, but may be admissible if relevant for other purposes such as common scheme, pattern of operation, identity, intent, or motive. Commonwealth v. Carriere, 470 Mass. 1, 16 (2014). Even if such evidence is relevant for other purposes, however, its probative value must not be outweighed by its prejudicial effect. Commonwealth v. Crayton, 470 Mass. 228, 249-250 & n.27 (2014). See Mass. G. Evid. § 403 (2016). "Determinations of the relevance, probative value, and prejudice of such evidence are left to the sound discretion of the judge, whose decision to admit such evidence will be upheld absent clear error." Commonwealth v. Robidoux, 450 Mass. 144, 158-159 (2007), and cases cited.

It is well established that in appropriate cases, a defendant's prior acts of domestic violence may be admitted for the purpose of showing a "defendant's motive and intent and to depict the existence of a hostile relationship between the

_____

[6] The Commonwealth contends that the defendant failed to preserve an objection to this evidence. The objection appears to have been properly preserved.

defendant and the victim." Commonwealth v. Linton, 456 Mass. 534, 551 (2010), quoting Commonwealth v. Snell, 428 Mass. 766, 777, cert. denied, 527 U.S. 1010 (1999). See Commonwealth v. Butler, 445 Mass. 568, 574 & n.6 (2005). Moreover, the defendant's argument against admission ignores the fact that he was separately indicted for attempted murder, a crime requiring the Commonwealth to prove specific intent. See Commonwealth v. Jordan (No. 1), 397 Mass. 489, 491-492 (1986). See also Commonwealth v. Ormonde, 55 Mass. App. Ct. 231, 236-237 (2002). Given the crimes with which the defendant was charged and the relatively short period between the incidents, evidence of the February, 2014, beating was probative of the defendant's mental state and intent in relation to the victim at the time of the July, 2014, offenses, and in our view, not unfairly prejudicial.[7] See Jordan (No. 1), supra, and cases cited. "The fact that the jury did not return verdicts of guilty on the [attempted murder indictment] is not determinative of the admissibility of the evidence." Id. at 492 n.4.

The defendant argues further that the photographs of the prior bad acts were especially inflammatory and unfairly prejudicial. This argument fails, given that "[t]he

_____

[7] It is not a foundational requirement for the admissibility of prior bad act evidence that the Commonwealth show either that the evidence is necessary or that there is no alternative way to prove its case. See Commonwealth v. Copney, 468 Mass. 405, 413 (2014); Mass. G. Evid. § 404(b) (2016).

admissibility of photographic evidence rests almost entirely in the discretion of the judge . . . [and] [i]t is a 'rare instance[] in which the probative value of [such] evidence is [so] overwhelmed by its inflammatory potential' that a reversal would be warranted" (citation omitted).  Commonwealth v. Bradshaw, 385 Mass. 244, 270 (1982).  See Commonwealth v. Bell, 473 Mass. 131, 142 (2015), cert. denied, 136 S. Ct. 2467 (2016) (photographs admissible if relevant to material issue, and "are not rendered inadmissible solely because they are gruesome [or duplicative] or may have an inflammatory effect on the jury" [citation omitted]).  Here, the photographs of the February, 2014, incident were relevant to the defendant's intent as to the incident occurring five months later in July, and the judge did not abuse his discretion in finding that their probative value outweighed any unfair prejudice to the defendant.[8]  See Bell, supra at 144.  Moreover, the judge sought to guard against the photographs' potential prejudicial effect by carefully instructing the jury, when the photographs of and related testimony concerning the February, 2014, incident were introduced in evidence and again during the final charge, that

_____

[8] Although we conclude that the photographic evidence depicting the victim's injuries resulting from the defendant's February, 2014, beating was properly admitted, we question the appropriateness of permitting the prosecutor to display poster-sized enlargements of the photographs, given the potential for prejudice inherent in prior bad act evidence.  See Commonwealth v. Crayton, 470 Mass. 228, 249 n.27 (2014).

the evidence could be considered only on the issues of the relationship between the victim and defendant and the defendant's intent, motive, or absence of mistake or accident -- and not the defendant's propensity to commit the alleged crimes. The judge did not err in admitting the testimony or the photographs.

<u>Judgments affirmed</u>.