NEYMAN, J.
*830 Following a jury trial in the Superior Court, the defendant, Steven Sudler, was convicted of battery with intent to intimidate causing bodily injury pursuant to G. L. c. 265, § 39 (b ), and a civil rights violation causing injury pursuant to G. L. c. 265, § 37.[1] The central issue on appeal is whether the Commonwealth presented sufficient evidence that the injury suffered by the victim -- two cut fingers --constituted "bodily injury" within the meaning of § 39 (b ). We conclude that the evidence was insufficient to support the defendant's conviction under § 39 (b ) because the Commonwealth did not prove "substantial impairment of the physical condition" as required by the statute. As the Commonwealth presented abundant evidence to prove the lesser included offense of assault or battery with intent to intimidate under G. L. c. 265, § 39 (a ), we vacate the judgment on the charge of battery with intent to intimidate causing bodily injury and remand the matter for resentencing on the lesser included offense. We also conclude that the judge did not err in allowing the Commonwealth to exercise certain peremptory challenges to prospective jurors and that the defendant's argument to the contrary is unavailing.
Background. We summarize the evidence, and the reasonable inferences therefrom, in the light most favorable to the Commonwealth. See Commonwealth v. Latimore, 378 Mass. 671, 676-677, 393 N.E.2d 370 (1979). On the evening of August 3, 2014, the victim ventured toward Andrew subway station (station) in the South Boston section of Boston to meet a friend. On the way to the station, he made a telephone call to another friend, Lydia Cottrell. As he joked with Cottrell, he heard a vehicle door slam, heard someone call him "faggot,"[2] and turned to see the defendant and the codefendant[3] talking to him. The defendant continued to taunt the victim by calling him "faggot" and "saying a lot of stuff." As the defendant and the codefendant walked toward him, the victim noticed that the defendant held a knife in his hand, "by his side of his hip." The victim pulled out his own knife, an argument ensued, and the defendant "took a swing" at the victim. The victim "jumped back" and "took a swing back at [the defendant]." The parties exchanged words, *831 and the defendant said, among other things, "I hate you South Boston niggers."[4]
The parties separated, and as the victim walked to the station he noticed "red dripping." He thought that the defendant had "cut the bottle" that the victim had been holding, and that the bottle "was leaking."[5] The victim testified that he "didn't even notice that [he] got cut," but as he tried to shake his hand off, he then "noticed that [he] had a wound and it was just continuing dripping, and [he] was just losing a lot of blood." The victim subsequently saw that two fingers of his hand had been cut. One cut was located on the victim's left ring finger, which, according to his testimony, was "sliced from here to there ... [f]rom nearly the top to the joint." The other cut was to the middle finger and went "from this side near the joint from the middle to the end, the corner."
The defendant subsequently entered the station and again called the victim a "faggot." The two exchanged words again, and the defendant "launched" toward the victim. The victim leaned back and then stabbed the defendant in the shoulder. At some point, the victim had a further confrontation with a woman later identified as Latoya Brown, whom he had seen earlier with the defendants. After Brown grabbed some of the victim's belongings, he chased her, caught up to her, and stabbed her on the shoulder during an ensuing scuffle.[6]
Police officers eventually arrived at the scene. Emergency medical services (EMS) later tended to the victim. The victim was upset because EMS did not offer him antibiotics or any other services. "All they did was basically [give him] a Band Aid. That was basically it."
The victim's testimony was corroborated by various witnesses and physical evidence. Cottrell testified that during her telephone conversation with the victim, she heard "people arguing, and people throwing words at each other"; heard a man "saying faggot over and over"; and heard the victim say, "[O]uch, he cut me." A police officer recovered a knife from the defendant's pocket at the scene, and testified that it had blood on it. Surveillance video recordings depicting portions of the incident were also played for the jury.
The defense at trial centered on the victim's alleged lack of credibility and the Commonwealth's inability to prove its case beyond a reasonable doubt. In support of the defense, Brown testified and painted the victim as the aggressor in the encounter.
Discussion. 1. Bodily injury. The defendant contends that the evidence was insufficient to prove "bodily injury" as defined under G. L. c. 265, § 39 (b ).[7] We review to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier *832 of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Latimore, 378 Mass. at 677, 393 N.E.2d 370, quoting Jackson v. Virginia, 443 U.S. 307, 318-319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
" General Laws c. 265, § 39, criminalizes a particular kind of unlawful conduct -- the assault or battery of an individual arising from the perpetrator's specific intent to intimidate such person because of that person's membership in a protected group." Commonwealth v. Kelly, 470 Mass. 682, 689, 25 N.E.3d 288 (2015). Section 39 is sometimes referred to as a "hate crime" statute. Id. at 686, 25 N.E.3d 288. Section 39 (b ) of the statute elevates the offense to a felony when the battery "results in bodily injury."[8]
"Bodily injury" is defined in G. L. c. 265, § 39 (b ), as "substantial impairment of the physical condition, including, but not limited to, any burn, fracture of any bone, subdural hematoma, injury to any internal organ, or any injury which occurs as the result of repeated harm to any bodily function or organ, including human skin." Here, the victim did not suffer any of the nonexclusive, enumerated forms of bodily injury contained in the statute. In other words, there was no evidence of any burn, fracture, hematoma, or injury to any internal organ, and the Commonwealth does not contend otherwise. Accordingly, our analysis centers on whether the injury to the victim's fingers constituted "substantial impairment of the physical condition." Id.
We start with the plain language of the statute, which we construe according to its "common and approved usage." Commonwealth v. Scott, 464 Mass. 355, 358, 982 N.E.2d 1166 (2013), quoting Opinion of the Justices, 313 Mass. 779, 782, 47 N.E.2d 260 (1943). However, "[t]echnical terms or those that have acquired a particular meaning within the law should be read in a manner that is consistent with that meaning." Scott, supra.
Although we have not previously analyzed the meaning of "substantial impairment of the physical condition" in the context of G. L. c. 265, § 39 (b ), we recently explained the meaning of that term in Commonwealth v. Ryan, 93 Mass. App. Ct. 486, 105 N.E.3d 1228 (2018). There, the defendant claimed that the Commonwealth failed to prove that the victim suffered a "bodily injury" within the meaning of G. L. c. 265, § 13K. Ryan, supra at 487, 105 N.E.3d 1228. Section 13K proscribes assault and battery on an elderly person or a person with a disability, and provides enhanced penalties for assault and battery causing "bodily injury." The definition of "bodily injury" in § 13K and the definition in § 39 (b ), enacted into law less than one year apart, are the same. Compare St. 1995, c. 297, § 4 (defining "bodily injury" in § 13K [a ] ), with St. 1996, c. 163, § 2 (defining "bodily injury" in § 39 [b ] ). Thus, Ryan provides helpful guidance. See *833 Commonwealth v. Wynton W., 459 Mass. 745, 747, 947 N.E.2d 561 (2011), quoting Insurance Rating Bd. v. Commissioner of Ins., 356 Mass. 184, 188-189, 248 N.E.2d 500 (1969) ("Where the Legislature uses the same words in several sections which concern the same subject matter, the words 'must be presumed to have been used with the same meaning in each section' ").
"Impairment" as used in G. L. c. 265, § 39 (b ), "derives from the medical context," and "we construe 'impairment of the physical condition' to mean damage to any body part that 'compromise[s] its ability to perform its function in the victim's body.' " Ryan, 93 Mass. App. Ct. at 489, 105 N.E.3d 1228, quoting Scott, 464 Mass. at 359, 982 N.E.2d 1166. The degree of impairment under § 39 (b ) must be "substantial," which means "considerable in quantity" or "significantly great." Ryan, supra, quoting Merriam-Webster's Collegiate Dictionary 1245 (11th ed. 2005). Thus, to establish substantial impairment of the physical condition -- i.e., "bodily injury" -- the Commonwealth must prove that the victim suffered an injury that "considerably or significantly compromises the usual functioning of any part of the victim's body." Ryan, supra at 490, 105 N.E.3d 1228.
We turn to the direct and circumstantial evidence presented at trial, and the reasonable inferences drawn therefrom, viewed most favorably to the Commonwealth. See Commonwealth v. Bush, 427 Mass. 26, 30, 691 N.E.2d 218 (1998). The defendant struck the victim once with a knife, making contact with two fingers. The only evidence of the victim's injury was as follows: (1) the victim's description of the cuts; (2) his testimony that he "was just losing a lot of blood"; (3) his testimony that he received "basically" a band-aid from EMS; and (4) Cottrell's testimony that she heard the victim say, "[O]uch, he cut me." The Commonwealth contends that evidence of the cuts plus the bleeding fingers was sufficient to meet its burden. We disagree.
The evidence did not demonstrate that the victim suffered an injury that "considerably or significantly compromise[d] the usual functioning of any part of the victim's body." Ryan, 93 Mass. App. Ct. at 490, 105 N.E.3d 1228. There was no testimony from the victim, medical personnel, or any other witness that use of the victim's fingers was hampered for any period of time.[9] The Commonwealth did not introduce medical records indicating that the victim required stitches or suffered an injury that compromised the usual function of a body part. There was no evidence of treatment, continued medical care, or any recovery period from which it could reasonably be inferred that use of the fingers was limited in some way. Nor was there evidence that the victim experienced any pain beyond the initial touching or that the pain was debilitating.[10] We cannot infer substantial impairment from such limited evidence without speculating. See Commonwealth v. Anderson, 396 Mass. 306, 312, 486 N.E.2d 19 (1985) ("The question of guilt must not be left to conjecture or surmise"). Contrast Ryan, 93 Mass. App. Ct. at 491-492, 105 N.E.3d 1228 (evidence *834 sufficient to show "substantial impairment of the physical condition" where there was evidence that victim's hip injury caused him pain and hampered his mobility for several weeks).
The victim's belief that EMS provided insufficient treatment adds nothing to the Commonwealth's case. The victim did not testify that the treatment was insufficient because of any pain, trauma, or compromised physical condition. Rather, he specified that he was concerned that the "knife could have been filled with any type of bacteria" and was upset that EMS did not offer antibiotics.
Finally, were we to accept the Commonwealth's argument that evidence of the cuts and bleeding, without more, constitutes "bodily injury," we would be reading language into the statute that does not exist. The Legislature specified that "bodily injury" includes "any burn, fracture of any bone, subdural hematoma, [or] injury to any internal organ." G. L. c. 265, § 39 (b ). It did not include the words "any cut" in that definition.[11] Thus, the injury at issue in this case must be analyzed under the catch-all provision of the statute requiring proof of "substantial impairment of the physical condition." G. L. c. 265, § 39 (b ). While the cuts here stemmed from a serious and inherently dangerous incident involving a knife fight, the evidence did not show impairment of any kind, much less the "substantial impairment" mandated by the statute. See Ryan, 93 Mass. App. Ct. at 490, 105 N.E.3d 1228.
Having determined that the evidence was insufficient to support a conviction under G. L. c. 265, § 39 (b ), we turn to the appropriate remedy. The defendant acknowledges that assault or battery with intent to intimidate, without causing bodily injury, is a lesser included offense of § 39 (b ). See G. L. c. 265, § 39 (a ). Indeed, the judge correctly instructed the jury as to the lesser included offense, without objection from either party. See Commonwealth v. Roderiques, 462 Mass. 415, 421, 968 N.E.2d 908 (2012) ("A crime is a lesser-included offense of another crime if each of its elements is also an element of the other crime" [citation omitted] ). As the elements of § 39 (a ) constitute a subset of the elements of § 39 (b ), and where, as here, the parties agree that the Commonwealth proved the elements of § 39 (a ) beyond a reasonable doubt, we vacate the judgment on the § 39 (b ) conviction, and we remand for entry of a conviction of the lesser included offense and for resentencing.
2. Peremptory challenges. Relying on Commonwealth v. Benoit, 452 Mass. 212, 892 N.E.2d 314 (2008), the defendant also contends that the judge erred in failing to scrutinize the adequacy and the genuineness of the prosecutor's rationale for exercising certain peremptory challenges. There was no error.
Article 12 of the Massachusetts Declaration of Rights prohibits the exercise of peremptory challenges "to exclude members of discrete groups solely on the basis of bias presumed to derive from that individual's membership in the group." Commonwealth v. Oberle, 476 Mass. 539, 544, 69 N.E.3d 993 (2017), quoting Commonwealth v. Rodriguez, 431 Mass. 804, 807, 731 N.E.2d 71 (2000). "Peremptory challenges are presumed to be proper, but that presumption may be rebutted on a *835 showing that (1) there is a pattern of excluding members of a discrete grouping and (2) it is likely that individuals are being excluded solely on the basis of their membership in that group." Oberle, supra at 545, 69 N.E.3d 993. "Once ... a pattern is found, the burden shifts to the party exercising the challenge to provide a 'group-neutral' explanation for it." Id., quoting Commonwealth v. Maldonado, 439 Mass. 460, 463, 788 N.E.2d 968 (2003). "The judge must then determine whether the explanation is both 'adequate' and 'genuine.' " Oberle, supra, quoting Maldonado, supra at 464-465, 788 N.E.2d 968. "[T]he critical point of focus for the trial judge as well as the appellate court turns to the adequacy and genuineness of the explanation proffered by the party seeking to exercise the peremptory challenge." Oberle, supra at 546, 69 N.E.3d 993. See generally Mass. G. Evid. § 1116 (2018).
In the present case, the defendant points to two alleged race-based peremptory challenges. First, in response to the prosecutor's exercise of a peremptory challenge of juror no. 246, the judge, sua sponte, stated, "This is the second of two non-white people. Why? That's a pattern." The prosecutor responded that he challenged the juror based on "[a]ge" and specified that he similarly "challenged two white male jurors who were [nineteen] years old." During the ensuing discussion about the age of certain empanelled jurors and the various challenges, the prosecutor noted, and the judge confirmed, that there were no jurors under the age of twenty-five. After the judge stated that she would exclude the juror, the defendant objected to the challenge. The judge made the specific finding that the challenge "wasn't based on race; it was based on age, and I'm accepting that."
Subsequently, the prosecutor challenged juror no. 269. Prior to any objection or inquiry, the prosecutor stated that the challenge was "because of age." The defendant objected to the challenge. The judge ruled, in relevant part: "I don't disbelieve that the peremptory challenge is being exercised because of age." After further discussion, the judge stated, "I don't think that you are making it up. I really -- I credit you.... So since I credit it, I'm not denying the challenge."
A challenge based on age, if genuine, is an acceptable basis upon which to exercise a peremptory challenge. See Commonwealth v. Lopes, 478 Mass. 593, 597, 91 N.E.3d 1126 (2018) ("young adults are not considered a discrete protected group for the purposes of Batson- Soares peremptory challenges and may be excluded"). The defendant acknowledges as much, but claims that age could have been a pretext and the judge should have conducted a more rigorous evaluation as required by Benoit, 452 Mass. at 218-219, 892 N.E.2d 314.
This case is unlike Benoit. There, the judge found that the challenge of the sole black juror on the venire was "not race based" and that "there [were] race neutral reasons" for it. Id. at 222, 892 N.E.2d 314. The court held that the judge failed to address the genuineness prong of the required analysis, failed to state whether the race-neutral reasons were genuine or bona fide, and failed to conduct, "implicitly or otherwise," a meaningful evaluation of the "adequacy and genuineness" of the prosecutor's reasons. Id. at 222, 892 N.E.2d 314. Here, by contrast, the judge explicitly considered both the adequacy and the genuineness of the prosecutor's explanations.
Initially, the judge found that the challenges were indeed made because of age, not race. See Lopes, 478 Mass. at 602, 91 N.E.3d 1126 ; Oberle, 476 Mass. at 545, 69 N.E.3d 993. Next, she explicitly accepted the prosecutor's rationale, stated that *836 she "did not disbelieve" the prosecutor, and further removed any doubt about the genuineness prong by stating on the record that she "credit[ed]" the prosecutor's explanation. Furthermore, the judge not only inquired about the specific challenge at issue but also inquired as to the prosecutor's basis for challenging or not challenging other jurors. In this way, and viewed as a whole and in context, the judge conducted a meaningful inquiry and satisfied herself that the prosecutor's reasoning was not merely adequate but also genuine. See Lopes, supra at 599, 91 N.E.3d 1126 (reminding judges to consider all relevant facts and circumstances including, inter alia, "similarities between excluded jurors and those, not members of the allegedly targeted group, who have been struck" [citation omitted] ).
Our courts have repeatedly held that in evaluating proffered rationales for a juror's exclusion, "we rely on the good judgment of the trial courts to distinguish bona fide reasons for such [challenges] from sham excuses belatedly contrived to avoid admitting facts of group discrimination." Commonwealth v. Prunty, 462 Mass. 295, 306, 968 N.E.2d 361 (2012), quoting Commonwealth v. Soares, 377 Mass. 461, 491, 387 N.E.2d 499, cert. denied, 444 U.S. 881, 100 S.Ct. 170, 62 L.Ed.2d 110 (1979). In other words, this was the judge's call to make, and where supported by the record, we do not substitute our review of a cold transcript for her judgment in the arena. See Benoit, 452 Mass. at 220, 892 N.E.2d 314 ("[W]hile appellate courts may be equipped to some extent to assess the adequacy of an explanation, they are particularly ill-equipped to assess its genuineness" [citation omitted] ); Commonwealth v. Garrey, 436 Mass. 422, 430, 765 N.E.2d 725 (2002) ("Where the record shows that the judge gave the matter 'meaningful consideration,' we will not second-guess his decision" [citation omitted] ); Commonwealth v. Curtiss, 424 Mass. 78, 82, 676 N.E.2d 431 (1997), quoting Commonwealth v. Fruchtman, 418 Mass. 8, 15, 633 N.E.2d 369, cert. denied, 513 U.S. 951, 115 S.Ct. 366, 130 L.Ed.2d 319 (1994) ("Sorting out whether a permissible or impermissible reason underlies a peremptory challenge is the function of the trial judge, and we do not substitute our judgment for his if there is support for it on the record"); Soares, supra at 490, 387 N.E.2d 499 ("[W]e are convinced that trial judges, given their extensive experience with jury empanelment, their knowledge of local conditions, and their familiarity with attorneys on both sides, will address these questions with the requisite sensitivity"). In the present case, the judge's express findings were neither unclear nor erroneous, and they are entitled to substantial deference. See E.B. Cypher, Criminal Practice and Procedure § 32:67, at 798-799 (4th ed. 2014) ("The judge's decision whether the reason for the challenge is bona fide or a pretext is entitled to substantial deference on appeal"). Accordingly, the defendant's argument is unavailing.
Conclusion. The judgment on the charge of battery with intent to intimidate causing bodily injury is vacated, and the verdict is set aside. The case is remanded for entry of a conviction on so much of that indictment as alleges the lesser included offense of assault or battery with intent to intimidate, in violation of G. L. c. 265, § 39 (a ) and for resentencing.[12] The judgment on *837 the indictment charging the defendant with a civil rights violation causing injury pursuant to G. L. c. 265, § 37, is affirmed.
So ordered.

The jury returned a not guilty verdict on a charge of assault and battery by means of a dangerous weapon.

The victim described himself as bisexual, and there is no dispute that his sexual orientation qualifies as a protected group within the meaning of G. L. c. 265, § 39.

The codefendant was tried with the defendant and was convicted of the lesser included offense of assault or battery with intent to intimidate.

The victim, the defendant, and the codefendant are black. Although the defendant disparaged the victim's race as well as his sexual orientation, the defendant was charged as to both the battery and the civil rights violation with acting on the basis of the victim's sexual orientation, and the jury were so instructed.

The victim testified that he had consumed alcohol and marijuana earlier in the day, and he held a bottle containing an alcoholic beverage during the initial altercation.

The victim was separately charged, tried, and convicted of assault and battery by means of a dangerous weapon for stabbing Brown.

The defendant moved for a required finding of not guilty at the close of the Commonwealth's case, at the close of all the evidence, and again prior to sentencing. The judge denied the motions.

General Laws c. 265, § 39, provides, in relevant part, as follows:
"(a ) Whoever commits an assault or a battery upon a person ... with the intent to intimidate such person because of such person's race, color, religion, national origin, sexual orientation, gender identity, or disability shall be punished ....
"(b ) Whoever commits a battery in violation of this section and which results in bodily injury shall be punished .... For purposes of this section, 'bodily injury' shall mean substantial impairment of the physical condition, including, but not limited to, any burn, fracture of any bone, subdural hematoma, injury to any internal organ, or any injury which occurs as the result of repeated harm to any bodily function or organ, including human skin."

Section 39 (b ) of G. L. c. 265 does not require that the "substantial impairment" be for any specified minimum amount of time. Whether an injury considerably or significantly compromises a usual bodily function must be decided on the facts of each case.

Cottrell's testimony that she heard the victim say, "[O]uch," tended to contradict the victim's contention that he initially "didn't even notice that [he] got cut." However, seen in the light most favorable to the Commonwealth, her testimony corroborated that he was injured in the first altercation.

We are not persuaded by the Commonwealth's passing argument that the victim's injuries "occur[red] as the result of repeated harm to any bodily function or organ, including human skin," a statutorily enumerated form of "bodily injury." G. L. c. 265, § 39 (b ). There was no evidence that the cuts stemmed from "repeated" conduct or activity by the defendant.

The defendant also contends that the jury rendered a factually inconsistent verdict by convicting him of battery with intent to intimidate causing bodily injury, but acquitting him of assault and battery by means of a dangerous weapon. See note 1, supra. However, the defendant concedes in his brief that under Massachusetts precedent, a conviction of the lesser included offense under G. L. c. 265, § 39 (a ), is not inconsistent with that acquittal. Consequently, we need not address that claim further.