NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1494

COMMONWEALTH

vs.

BEHNAM PARVARESH.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury trial in the District Court, the defendant, Behnam Parvaresh, was convicted of assault and battery on a family or household member, G. L. c. 265, § 13M (a), and strangulation, G. L. c. 265, § 15D (b).[1]  The defendant filed a motion for a new trial on the strangulation conviction, arguing that he received ineffective assistance of counsel because trial counsel failed to investigate and call an expert witness to rebut evidence of injuries to the victim's neck that corroborated the victim's allegations of strangulation.  The motion judge, who was not the trial judge, denied the

_____

[1] The defendant was acquitted of two other charges:  witness intimidation, G. L. c. 268, § 13B, and assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A (b).

defendant's motion for a new trial without an evidentiary hearing.  The defendant's direct appeal from his convictions and his appeal from the order denying his motion for a new trial were consolidated in this court.  On appeal, the defendant argues that the motion judge erred in denying his motion for a new trial and that the trial judge erred in the admission of certain evidence.  We affirm.

Discussion.  1.  Ineffective assistance of counsel.  Trial counsel is ineffective when "(1) 'there has been serious incompetency, inefficiency, or inattention of counsel -- behavior of counsel falling measurably below that which might be expected from an ordinarily fallible lawyer'; and (2) as a result, the defendant was 'likely deprived . . . of an otherwise available, substantial ground of defence.'"  Commonwealth v. Henley, 488 Mass. 95, 134 (2021), quoting Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).  When the ineffective assistance claim is "based on a tactical or strategic decision, the test is whether the decision was 'manifestly unreasonable when made'" (quotation omitted).  Commonwealth v. Kolenovic, 471 Mass. 664, 674 (2015), quoting Commonwealth v. Acevedo, 446 Mass. 435, 442 (2006).  Manifestly unreasonable decisions refer only to "strategy and tactics which lawyers of ordinary training and skill in the criminal law would not consider competent."  Kolenovic, supra, quoting Commonwealth v. Pillai, 445 Mass. 175,

2

186-187 (2005).  Finally, "[a]bsent a constitutional error, we review the denial of a motion for a new trial for an abuse of discretion."  Commonwealth v. Corey, 493 Mass. 674, 684 (2024).

At trial, the Commonwealth introduced (1) the victim's testimony that the defendant strangled her; (2) medical records made by the treating physician and nurse; and (3) photographs of the victim's neck and limbs taken at the emergency room.  During trial, the defendant's theory of the case was that the victim fabricated the allegations against him.  Through effective cross-examination, trial counsel raised the issue of reasonable doubt as to how the victim's injuries were caused, focusing on various apparent inconsistencies of when the scratches were seen on the victim's neck.

The defendant now argues that trial counsel provided ineffective assistance by failing to consult with a medical expert to rebut the Commonwealth's evidence of the victim's injuries to her neck, which corroborated the victim's testimony that the defendant grabbed her by the neck and applied pressure. In support of his motion for a new trial, the defendant offered the affidavit of Dr. Christian Klaucke, an emergency room doctor, who reviewed the trial evidence and the medical literature.  In the affidavit, the defendant's expert opined that the timing of the markings on the victim's neck were

inconsistent with "an alleged non-lethal strangulation event occurring just prior to [the victim making] the 911 call."

The defendant also submitted an affidavit from trial counsel, who stated that he considered calling a medical expert but decided against it. Trial counsel explained that he was reluctant to argue that the victim caused the injuries to herself, fearing that he would alienate the jury. Instead, trial counsel chose to focus on cross-examination of a nurse regarding the absence of notes in the medical file about scratches or abrasions to the victim's neck when she arrived at the hospital and attempted to focus the jury's attention on the existence of reasonable doubt.[2]

The defendant has failed to demonstrate that trial counsel's approach was manifestly unreasonable or that he was deprived of an otherwise available substantial ground of defense.[3] First, the victim's injuries were not so complex as to

---

[2] We note that this strategy proved effective as the defendant was acquitted of charges of assault and battery by means of a dangerous weapon and intimidation of a witness.

[3] The defendant also argues that the motion judge abused his discretion by denying the defendant's request for an evidentiary hearing on the motion for new trial. It was not an abuse of discretion for the motion judge to decline to conduct an evidentiary hearing where, as here, the motion was thoroughly briefed and, for the reasons discussed herein, the motion and affidavits did not make an adequate showing that would raise a substantial issue. See Mass. R. Crim. P. 30 (c) (3), as appearing in 435 Mass. 1501 (2001). See also Commonwealth v.

4

render trial counsel's failure to call an expert medical witness manifestly unreasonable. Cf. Commonwealth v. Baran, 74 Mass. App. Ct. 256, 277-278 (2009) (ineffective assistance of counsel not to hire expert where prosecutor called three physicians and child psychotherapist). Here, the defendant's expert noted that "[a] fair-skinned individual . . . can actually demonstrate the rapid timing of an abrasion's appearance on themselves by simply scratching their own forearm with a fingernail." The expert also acknowledged that a review of the medical literature suggests that up to forty percent of non-fatal strangulation injuries have no external signs. Therefore, the absence or presence of abrasions and scratches is not dispositive of whether the victim was strangled.

Second, there is no requirement that trial counsel present expert medical evidence to support an argument, "especially where other evidence is presented to support it." Commonwealth v. Hensley, 454 Mass. 721, 736 (2009). Through cross-examination of the witnesses and admission of the victim's medical records, trial counsel effectively raised the issue as to whether the victim's neck injuries occurred before or after the police arrived. Trial counsel underscored this argument in

Goodreau, 442 Mass. 341, 348-349 (2004) (judge may exercise discretion in declining to hold evidentiary hearing where "theory of the motion, as presented by the papers, is not credible or not persuasive").

5

his closing statement, vigorously arguing that the victim's testimony was not credible and that the jury should credit the testimony of several other witnesses who did not observe scratches or injuries to the victim's neck.

Further, the defendant has not shown that an expert opinion such as that of Dr. Klaucke would have added materially to the defendant's case. Expert opinion testimony such as Dr. Klaucke's on whether the injuries to the victim's neck were self-inflicted would not have materially added to the defendant's case and in fact may have even weakened it. In his affidavit, Dr. Klaucke opined that the victim's injuries were inconsistent with having been caused by the victim through defending herself against an attack by the defendant. At best, this opinion was immaterial as there was no testimony or theory presented to the jury that the victim's injuries were caused by the victim when she was defending herself.

As far as the timing of the scratches to the victim's neck, which would support the defense theory that the injuries were not caused by the defendant, Dr. Klaucke's testimony did little, if anything, to assist the defense. Dr. Klaucke acknowledged that "there are no robust studies measuring the timing of abrasion appearance in the acute phase (seconds to minutes) after injury to the skin." Further, Dr. Klauke's expert opinion about when the victim sustained neck injuries was based solely

6

on his accepting the testimony of one witness and disregarding both the victim's testimony and that of a police officer who arrived on the scene.

Finally, we note that the charge of strangulation did not solely rest on the scratches to the victim's neck. The victim testified that the defendant squeezed her neck and, in so doing, made it difficult for her to breathe and to speak. Based upon the above, the failure to call a medical expert was not manifestly unreasonable and, accordingly, it was not an abuse of discretion for the motion judge to deny the defendant's motion for a new trial.

2. Prior bad acts. At trial, the victim was allowed to testify that soon after she married the defendant, the nature of her relationship with him changed. She testified that after she moved from Iran to the United States, the defendant threatened to burn her passport, told her that "Mr. Trump is not good with Iranian[s]," and told her that the police were racist and killed Iranians. She also testified that the defendant had kicked and punched her in the past to the point of bruising.

The defendant claims that the judge abused her discretion because the probative value of this evidence was outweighed by the risk of unfair prejudice. While evidence of prior bad acts is not admissible to show a defendant's bad character or propensity to commit a crime, it may be admissible for another

7

purpose.  In the context of domestic violence, it may be admissible to prove the existence of a hostile relationship between the defendant and the victim.  See Commonwealth v. Oberle, 476 Mass. 539, 550 (2017).  The evidence of the defendant's prior bad acts, which was limited to several months before the crime, was relevant to provide the jury with a complete picture of the incident and the nature of the relationship between the parties.  Moreover, the judge instructed the jury that they were to consider the testimony only as evidence of the victim's perception of the relationship and that they could not consider it for propensity purposes or as evidence of character, bad behavior, or criminal conduct.

Finally, while we agree with the defendant that the trial judge deviated from the model jury instruction, her limiting instructions for the prior bad act evidence was nevertheless proper and effectively minimized any potential prejudice.  To the extent that the instructions strayed from the model jury instructions by allowing the victim's testimony about the defendant's prior bad acts only for the victim's "perception" of the nature of their relationship, the defendant was not harmed but rather was the beneficiary of that limitation.

3.  Admission of victim's call to 911.  The Commonwealth moved in limine for the admission of the victim's recorded statements in her call to 911.  The judge denied the motion

8

without prejudice, ruling that the 911 call did not qualify as an excited utterance.  At trial, the Commonwealth once again moved to introduce the 911 call, this time not for the truth of the matter, but rather to establish that the victim had in fact called 911.  The defendant objected.  The judge allowed the admission of the 911 recording, but before the audio recording was played to the jury, provided the jury with a limiting instruction.  On appeal, the defendant argues that the judge erred in the admission of the 911 call and that the judge's improper limiting instruction compounded this error.

Assuming without deciding that the admission of the 911 call was in error, the defendant suffered no prejudice as the 911 call did not inculpate the defendant.  The brief audio recording played to the jury consisted of the victim providing her address, telling the 911 operator that she could not speak English and that she needed help.  These statements were cumulative of the trial testimony, as both the victim and the responding officers testified without objection about the fact that 911 was called.

Although he did not object at trial, the defendant now claims that judge's limiting instruction allowed the jury to consider the recorded statements for the truth of the matter asserted.  When read as a whole, the judge's instruction correctly conveyed to the jury that the evidence "is only being

9

admitted to establish that . . . she did make a call to the police department. That's the purpose for which this is being admitted." Given the nature of the statements in the 911 recording, even if the jury improperly considered her statements for the truth of the matter asserted, there was no prejudice to the defendant. It bears repeating that her statements did not inculpate him: she said she needed help, provided her address, and explained that she did not speak English.

4. Admission of testimony of victim's physical gestures. At trial, a police officer testified that when he arrived at the scene, the victim pointed to the defendant and made a gesture with her hands around her neck. The defendant did not object to this testimony, so we review for a substantial risk of a miscarriage of justice. Commonwealth v. Alphas, 430 Mass. 8, 17 (1999).

We find no substantial risk of a miscarriage of justice, as the testimony that the police officer saw the victim, who did not speak English, gesturing with her hands to her neck was cumulative of the victim's testimony at trial. The properly admitted trial testimony of the victim was that the defendant placed both of his hands around her neck and squeezed. The Commonwealth also adduced testimony from the next-door neighbor, who was present when the police arrived, that when she first saw the victim, she repeatedly told her "Behnam choke." In

10

addition, the police officer testified that after seeing the victim gesturing with her hands, the defendant was immediately placed under arrest. The defendant seized upon this evidence, forcefully arguing to the jury that the police rushed to judgment and failed to properly investigate the victim's allegations. This evidence also supported the defendant's successful request for a Bowden instruction. See Commonwealth v. Bowden, 379 Mass. 472, 485-486 (1980). There was no harm to the defendant, where, as here, the evidence was cumulative and more important to the defense than to the Commonwealth. See Commonwealth v. Nardi, 452 Mass. 379, 395-396 (2008) (erroneously admitted testimony was equally, if not more, important to defense and therefore did not create substantial likelihood of miscarriage of justice). See also Commonwealth v. McCoy, 456 Mass. 838, 851 (2010).

Judgments affirmed.

Order denying motion for new trial affirmed.

By the Court (Ditkoff, Hand & Walsh, JJ.[4]),

*Paul Little*

Clerk

Entered: May 27, 2025.

---

[4] The panelists are listed in order of seniority.