SHIN, J.
*487 A jury convicted the defendant of assault and battery causing bodily injury on a person sixty years of age or older, in violation of G. L. c. 265, § 13K(b ), and larceny of property with a value exceeding $250 from a person sixty years of age or older, in violation of G. L. c. 266, § 30(5). On appeal she argues that the Commonwealth failed to prove that the victim suffered a "bodily injury" within the meaning of G. L. c. 265, § 13K(b ), that her larceny conviction cannot stand because the Commonwealth failed to disprove her claim of honest yet mistaken belief, that the prosecutor misstated the evidence in his closing argument, and that her trial counsel was ineffective. Construing the term "bodily injury," defined in G. L. c. 265, § 13K(a ), as an injury that considerably or significantly compromises the usual functioning of any part of a victim's body, we conclude that the evidence was sufficient to support the defendant's conviction under § 13K(b ). As we also reject the defendant's remaining arguments, we affirm.
Background. We summarize the evidence and the reasonable inferences therefrom in the light most favorable to the Commonwealth. See Commonwealth v. Latimore, 378 Mass. 671, 676-677, 393 N.E.2d 370 (1979). The victim was born in 1936 and met the defendant in 2007. Their relationship started as a romantic one but evolved into "a friendship type thing." Throughout the course of their relationship, the defendant often stayed at the victim's home, sometimes up to a week at a time.
From November of 2013 to January of 2015, the victim noticed that there were unauthorized withdrawals and other transactions on each of his monthly debit card statements. In total, the unauthorized charges amounted to several thousand dollars. The victim had not given the defendant permission to use his card during this period[1] and questioned her multiple times about the charges, telling her that he "was getting behind on his bills." Each time, the defendant admitted using the card but said that she did so only after checking the account balance to ensure that enough funds were available.
*1232 On December 12, 2014, while at the defendant's apartment, the victim again questioned her about the money missing from his account. As the victim was preparing to leave, the defendant "blindsided" him and hit him from behind with a "tremendous ...
*488 blow," causing him to fall to the hardwood floor. The victim "was in great pain" and felt "a burning sensation in the lower back and ... hip area." He spent two to three hours at the hospital, where he was diagnosed with an elbow abrasion and hip contusion and was prescribed pain medication. Although hospital staff wanted him to use a walker, the victim declined because he wanted to stay as "mobile as [he] possibly could."
In mid-to late December of 2014, the victim's neighbor observed that he "seemed to be deteriorating as far as walking"; he "was limping a lot," "seemed to be in a lot of pain," and "would take ... about [fifteen] minutes to get up [a twenty-foot] driveway." According to the neighbor, the victim did not exhibit these symptoms during the first half of the month. An officer investigating the incident in late December of 2014 likewise observed that the victim "was very slow, had a limp, [and] looked like he was injured." Ultimately, it took several weeks before the victim's pain subsided and he started regaining mobility on his injured side.
Discussion. 1. "Bodily injury." General Laws c. 265, § 13K, proscribes assault and battery on an elderly person[2] or a person with a disability and sets out three levels of penalties based on the severity of the bodily injury sustained. See G. L. c. 265, § 13K (a 1/2) (assault and battery); G. L. c. 265, § 13K(b ) (assault and battery causing "bodily injury"); G. L. c. 265, § 13K(c ) (assault and battery causing "serious bodily injury"). The relevant provision here, § 13K(b ), inserted by St. 1995, c. 297, § 4, provides that "[w]hoever commits an assault and battery upon an elder or person with a disability and by such assault and battery causes bodily injury shall be punished." "Bodily injury" is defined as a "substantial impairment of the physical condition, including, but not limited to, any burn, fracture of any bone, subdural hematoma, injury to any internal organ, or any injury which occurs as the result of repeated harm to any bodily function or organ, including human skin." G. L. c. 265, § 13K(a ), inserted by St. 1995, c. 297, § 4.
At issue is the degree of severity required for an injury to constitute a "substantial impairment of the physical condition" within the meaning of §§ 13K(a ) and (b ). In construing this phrase, we look first to the statute's plain language and will give " 'effect consistent with its plain meaning and in light of the aim *489 of the Legislature' unless to do so would achieve an 'absurd' or 'illogical' result." Commonwealth v. Scott, 464 Mass. 355, 358, 982 N.E.2d 1166 (2013), quoting from Sullivan v. Brookline, 435 Mass. 353, 360, 758 N.E.2d 110 (2001). As a general matter, "[w]ords and phrases shall be construed according to the common and approved usage of the language." Scott, 464 Mass. at 358, 982 N.E.2d 1166, quoting from Opinion of the Justices, 313 Mass. 779, 781-782, 47 N.E.2d 260 (1943). "[T]echnical terms," however, "should be read in a manner that is consistent with [their technical] meaning." Ibid.
In Scott the Supreme Judicial Court, interpreting "impairment" as used in *1233 G. L. c. 265, § 13A(b )(i),[3] concluded that the word "draws its meaning from the medical context, where definitions emphasize an injury's impact on the structure of a part of the victim's anatomy and its ability to serve its usual role in the body." Scott, 464 Mass. at 358, 982 N.E.2d 1166. We likewise conclude that "impairment" in § 13K(a ) derives from the medical context, as we presume that the Legislature intended the word to have a consistent meaning throughout the statutory sections criminalizing assault and battery. See Commonwealth v. Wynton W., 459 Mass. 745, 747, 947 N.E.2d 561 (2011), quoting from Insurance Rating Bd. v. Commissioner of Ins., 356 Mass. 184, 188-189, 248 N.E.2d 500 (1969) ("Where the Legislature uses the same words in several sections which concern the same subject matter, the words 'must be presumed to have been used with the same meaning in each section' "). Thus, drawing from the definition in Scott, we construe "impairment of the physical condition" to mean damage to any body part that "compromise[s] its ability to perform its function in the victim's body." Scott, 464 Mass. at 359, 982 N.E.2d 1166.
In determining what degree of impairment is required, we are guided by the neighboring word "substantial." See Commonwealth v. Magnus M., 461 Mass. 459, 462, 961 N.E.2d 581 (2012), quoting from Commonwealth v. Brooks, 366 Mass. 423, 428, 319 N.E.2d 901 (1974) ("We ... interpret 'words in a statute ... in light of the other words surrounding them' "). We give "substantial" its usual and accepted meaning, which is "considerable in quantity" or "significantly great." Merriam-Webster's Collegiate Dictionary 1245 (11th ed. 2005). A "substantial impairment of the physical condition"
*490 therefore occurs where an injury considerably or significantly compromises the usual functioning of any part of the victim's body.
Contrary to the defendant's assertion, the statute does not require the Commonwealth to prove that the victim suffered one of the enumerated examples of "bodily injury," such as a burn or fracture. The enumeration is illustrative, see Scott, 464 Mass. at 359, 982 N.E.2d 1166, but plainly nonexclusive, as shown by the preceding phrase, "including but not limited to." G. L. c. 265, § 13K(a ). In trying to evade this plain language, the defendant relies on Commonwealth v. Chapman, 433 Mass. 481, 744 N.E.2d 14 (2001), in particular, on its statement that G. L. c. 265, § 13J,[4] "defines the bodily injuries the Legislature intended to be punishable under the statute, i.e., burns, fractures, injuries to internal organs, [and] perilous physical conditions." Chapman, 433 Mass. at 484, 744 N.E.2d 14. The defendant suggests that the court's use of "i.e." means that it determined the enumerated examples to be exclusive. We do not believe, however, that the court intended for "including,"
*1234 which precedes the enumeration in § 13J(a ), to have no meaning. Rather, the court's statement is best read in light of the last item it listed, "perilous physical conditions," which is a general term that does not limit the statutory definition to any specific type of injury. Indeed, the court went on to conclude that the victim's injury, asphyxiation, constituted a "substantial impairment of the physical condition" without analyzing whether it fell within one of the enumerated examples. Ibid.
We also reject the defendant's suggestion that the degree of impairment required for a conviction under § 13K(b ) is comparable to what is required by Scott. Again, Scott concerned a conviction of assault and battery resulting in "serious bodily injury." 464 Mass. at 358, 982 N.E.2d 1166. As § 13K(c ) provides for enhanced penalties for assault and battery on an elder causing "serious bodily injury,"[5] it is plain that an impairment of some lesser gravity will qualify as a "bodily injury" under § 13K(b ).
*491 At the same time, we reject the Commonwealth's position that any injury qualifies as a "bodily injury" so long as it is more than merely "transient and trifling." In the case on which the Commonwealth relies, Commonwealth v. Burno, 396 Mass. 622, 487 N.E.2d 1366 (1986), the defendant was convicted of assault and battery by means of a dangerous weapon under a theory of reckless conduct. Id. at 625, 487 N.E.2d 1366. Proof of injury is relevant under that theory because the reckless act plus actual physical injury are deemed to "substitute[ ] for (or ... allow the 'inference' of) intentional conduct." Commonwealth v. Welch, 16 Mass. App. Ct. 271, 274, 450 N.E.2d 1100 (1983). It was in this context, divorced from any statutory language, that the Burno court adopted the standard of "more than transient and trifling." 396 Mass. at 627, 487 N.E.2d 1366.
The Burno standard therefore does not control the question of statutory interpretation before us. Cf. Scott, 464 Mass. at 359, 982 N.E.2d 1166 ("We ... reject the standard urged by the Commonwealth, that any injury will constitute an 'impairment' under G. L. c. 265, § 13A, if it is 'more than merely transient and trifling' "). To establish a "bodily injury" under § 13K(b ), the Commonwealth has the higher burden of proving a "substantial impairment of the physical condition," which again we interpret as an injury to any body part that considerably or significantly compromises its usual bodily function. The injury must be comparable in gravity to one of the enumerated examples-"any burn, fracture, subdural hematoma, injury to any internal organ, or any injury which occurs as the result of repeated harm to any bodily function or organ, including human skin," G. L. c. 265, § 13K(a ) -but need not rise to the level of a "serious bodily injury." See Scott, 464 Mass. at 359, 982 N.E.2d 1166 ("degree of 'impairment' contemplated by [ § 13A(c ) ] is best understood when considered with" surrounding words and clauses). Cf. Zoning Bd. of Appeals v. Housing Appeals Comm., 457 Mass. 748, 757, 933 N.E.2d 74 (2010) ("general phrase 'conditions and requirements' ... cabined by the specific examples that follow it to conditions of the same or similar kind").
*1235 We turn to whether the evidence was sufficient in this case to prove that the victim suffered a "bodily injury." We conclude that it was. The victim's hip injury was severe enough to cause him pain and hamper his mobility for several weeks, so much so that he needed fifteen minutes just to walk twenty feet. This permitted the jury to find that the injury constituted a "substantial impairment *492 of the physical condition," as it significantly compromised the functioning of the victim's hip in his body. Cf. Chapman, 433 Mass. at 484, 744 N.E.2d 14 ("Asphyxiation, like malnutrition or dehydration, may cause a substantial impairment of the physical condition" and thus "is a bodily injury within the meaning of § 13J(a )").
2. Honest but mistaken belief. The defendant challenges her larceny conviction on the premise that the Commonwealth failed to disprove her claim that she honestly believed she had permission to use the victim's debit card. Honest but mistaken belief is an affirmative defense to larceny. See Commonwealth v. Liebenow, 470 Mass. 151, 160, 20 N.E.3d 242 (2014) ; Commonwealth v. St. Hilaire, 470 Mass. 338, 348, 21 N.E.3d 968 (2015). To raise the defense, the defendant has the burden of production, which is satisfied if " 'any view of the evidence' would support a factual finding that the defendant honestly believed he or she had a legal right to take [the] property." St. Hilaire, 470 Mass. at 348, 21 N.E.3d 968, quoting from Liebenow, 470 Mass. at 156, 20 N.E.3d 242. If the defendant meets his or her burden, the burden shifts to the Commonwealth to disprove the defense. See St. Hilaire, 470 Mass. at 349, 21 N.E.3d 968.
In this case the defendant failed to preserve the defense because she did not give notice of it in accordance with Mass.R.Crim.P. 14(b)(3), as appearing in 442 Mass. 1518 (2004). That rule requires a defendant intending to rely on "a defense based upon a ... claim of authority" to so notify the Commonwealth before trial and file a copy of the notice with the clerk of the court. A defendant who intends to raise a defense of honest belief "is required to follow the mandate of rule 14(b)(3)." Commonwealth v. Vives, 447 Mass. 537, 542 n.4, 854 N.E.2d 1241 (2006). See Reporter's Notes to Rule 14(b)(3) (Revised 2004), Massachusetts Rules of Court, Rules of Criminal Procedure, at 163 (Thomson Reuters 2018) ("A 'claim of authority' is an assertion that the claimant has received an express or implied right to do an act from one lawfully empowered to grant such right"). The defendant's failure to do so here means that "claim of authority" was "unavailable [to her] as a defense." Commonwealth v. O'Connell, 438 Mass. 658, 665, 783 N.E.2d 417 (2003).
In any event, even assuming the defendant adequately raised the defense, the Commonwealth provided sufficient evidence to disprove it.[6] The victim testified *1236 that he did not give the defendant permission to use his debit card from November of 2013 to the *493 beginning of 2015, which is when the unauthorized charges appeared on his account. He also testified that, during that period, he questioned the defendant numerous times about the missing money and told her that he was falling behind on his bills. Furthermore, before November of 2013, the victim had permitted the defendant to use the card on only a handful of occasions to make small purchases, yet the total of the unauthorized charges amounted to thousands of dollars. A rational jury could have rejected the defendant's claim of honest belief based on this evidence. See Liebenow, 470 Mass. at 161, 20 N.E.3d 242 ("Evidence of reasonableness may ... be considered by the jury to assist in their determination whether to credit a defendant's honest belief").
3. Closing argument. The defendant next contends that the prosecutor's statement during summation that "the defendant admitted to everything" mischaracterized the evidence.[7] Because the defendant did not object, we review any error for a substantial *494 risk of a miscarriage of justice. See Commonwealth v. St. Louis, 473 Mass. 350, 359, 42 N.E.3d 601 (2015).
We see no error. The prosecutor immediately went on to state that the defendant "admitted that she did push [the victim] when the [investigating officer] called her" and "admitted to [the victim] numerous times that she took the money out of his account." These statements were firmly grounded in the evidence. While the prosecutor's comment that the defendant admitted to "everything" was perhaps hyperbolic, it does not warrant reversal. See Commonwealth v. Sylvia, 456 Mass. 182, 195, 921 N.E.2d 968 (2010), quoting from Commonwealth v. Ruiz, 442 Mass. 826, 835, 817 N.E.2d 771 (2004) ("Excusable hyperbole is not a ground for reversal, and the jury are presumed to have a certain measure of sophistication in sorting out excessive claims on both sides").
4. Ineffective assistance of counsel. We need not dwell on the defendant's argument that her trial counsel was ineffective.[8] An ineffective assistance claim *1237 "made on the trial record alone is the weakest form of such a challenge because it is bereft of any explanation by trial counsel for his actions and suggestive of strategy contrived by a defendant viewing the case with hindsight." Commonwealth v. Peloquin, 437 Mass. 204, 210 n.5, 770 N.E.2d 440 (2002). Such claims may be resolved on direct appeal, as opposed to on a motion for new trial, only where "the factual basis of the claim appears indisputably on the trial record." Commonwealth v. Zinser, 446 Mass. 807, 811, 847 N.E.2d 1095 (2006), quoting from Commonwealth v. Adamides, 37 Mass. App. Ct. 339, 344, 639 N.E.2d 1092 (1994). This is not such a case. We have no affidavit from counsel, and the record does not indisputably establish that his strategy was either manifestly unreasonable or "deprived the defendant of an otherwise available, substantial ground of defence." Commonwealth v. Saferian, 366 Mass. 89, 96, 315 N.E.2d 878 (1974).
Judgments affirmed.

Before November of 2013, the victim permitted the defendant to use the card approximately six times to make small purchases.

An "[e]lder" is "a person sixty years of age or older." G. L. c. 265, § 13K(a ), inserted by St. 1995, c. 297, § 4.

Scott concerned a conviction of assault and battery causing "serious bodily injury" under § 13A(b )(i). Scott, 464 Mass. at 358, 982 N.E.2d 1166. The meaning of "impairment" was at issue because G. L. c. 265, § 13A(c ), as appearing in St. 2002, c. 35, § 1, defines "serious bodily injury" to include "bodily injury that results in ... loss or impairment of a bodily function, limb or organ."

This statute proscribes assault and battery on a child and defines "bodily injury" as a "substantial impairment of the physical condition including any burn, fracture of any bone, subdural hematoma, injury to any internal organ, any injury which occurs as the result of repeated harm to any bodily function or organ including human skin or any physical condition which substantially imperils a child's health or welfare." G. L. c. 265, § 13J(a ), inserted by St. 1993, c. 340, § 2.

Section 13K(a ), defines "serious bodily injury" as "bodily injury which results in a permanent disfigurement, protracted loss or impairment of a bodily function, limb or organ, or a substantial risk of death." This definition is nearly identical to the one analyzed in Scott. Compare G. L. c. 265, § 13K(a ), with G. L. c. 265, § 13A(c ).

Although not requested by the defendant, the judge gave the following instruction on honest but mistaken belief: "If the defendant took another person's property in an honest belief that she had a legal right to do so, then you must find the defendant not guilty, even if that belief was in fact mistaken, because she then lacked the intent to steal." This tracks the District Court's model jury instruction except that the judge, correctly in accordance with Liebenow, 470 Mass. at 158-161 & n.14, 20 N.E.3d 242, omitted the part of the model instruction requiring the defendant's belief to be "reasonable." Instruction 8.520 of the Criminal Model Jury Instructions for Use in the District Court (Supplemental Instruction No. 7) (2009). We note that the model instruction has not been revised to conform with Liebenow. We also note that the model instruction does not include language explaining the requirement that, if the defendant has met his or her burden of production, the Commonwealth must prove beyond a reasonable doubt that the defendant did not honestly believe that he or she had the right to take the property. See Vives, 447 Mass. at 541, 854 N.E.2d 1241 ; St. Hilaire, 470 Mass. at 348-349, 21 N.E.3d 968. Cf. Instruction 9.260 of the Criminal Model Jury Instructions for Use in the District Court (2009) ("If evidence of self-defense is present, the Commonwealth must prove beyond a reasonable doubt that the defendant did not act in self-defense").
Here, the adequacy of the judge's instruction is not before us. While the defendant claims that her attorney was ineffective for failing to request an instruction explaining these shifting burdens, she raises no independent challenge to the instruction itself. And had she raised such a challenge, we would examine the instruction in light of the charge as a whole, which made plain the Commonwealth's burden of proving beyond a reasonable doubt each element of the crime, including specific intent to steal. In similar circumstances the court in Vives, 447 Mass. at 542-543, 854 N.E.2d 1241, deemed the judge's instruction on honest belief to be adequate.

The defendant also suggests that the prosecutor misstated the evidence when he argued that the defendant took the money with "no intention to pay it back, because ... she kept doing it." She does not develop this argument further, and we decline to address it.

The defendant challenges the following aspects of trial counsel's performance: (1) his failure to request an honest belief instruction that explained the parties' shifting burdens; (2) his failure to object to the prosecutor's closing argument; and (3) his eliciting of, and failing to move to strike, testimony that the defendant has a "history of drug abuse."