NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

21-P-23                                        Appeals Court

COMMONWEALTH  vs.  JAHEEL ROBINSON.

No. 21-P-23.

Norfolk.      July 11, 2023. - September 15, 2023.

Present:  Green, C.J., Ditkoff, & Hodgens, JJ.

Assault and Battery.  Evidence, Expert opinion, Intent.
    Witness, Expert.  Intent.  Practice, Criminal, Motion for a
    required finding.  Words, "Bodily injury."

Indictments found and returned in the Superior Court Department on February 14, 2013.

The cases were heard by Thomas A. Connors, J.

Jennifer Petersen for the defendant.
Laura A. McLaughlin, Assistant District Attorney (Lisa Beatty, Assistant District Attorney, also present) for the Commonwealth.

DITKOFF, J.  The defendant, Jaheel Robinson, appeals from his convictions after a Superior Court jury-waived trial of assault and battery on a child causing substantial bodily injury, G. L. c. 265, § 13J (b), and assault and battery on a child causing bodily injury, G. L. c. 265, § 13J (b).  The child

first suffered extensive bruising to his ear.  Approximately two weeks later, the child suffered a serious brain injury.  Based on the particular manner in which the Legislature has defined "bodily injury" in G. L. c. 265, § 13J (a), we conclude there was insufficient evidence that the ear injury constituted a bodily injury under the statute in the absence of evidence that the ear bruising substantially impaired the child's wellbeing.  Accordingly, we vacate the conviction of assault and battery on a child causing bodily injury, and remand for entry of a conviction on the lesser included offense of assault and battery, G. L. c. 265, § 13A.  Further concluding that there was sufficient evidence that the defendant intentionally inflicted the more serious injuries to the child, we affirm the conviction of assault and battery on a child causing substantial bodily injury.

1.  Background.  a.  Injuries.  On June 17, 2012, the victim, a male child, was born without any complications or medical issues.  In early September 2012, the child's mother returned to work and resumed night classes two evenings per week, and the defendant, the child's father, became the primary caregiver.  Shortly thereafter, the relationship between the parents began to deteriorate.

In mid-September 2012, the mother told the defendant that she wanted to move out and that their relationship "[was]n't

going to work."  Later that same month, while the mother was at work, the defendant sent her a text message with a photograph depicting several scratch marks on the child's back.  The mother immediately called the defendant to discuss how the child sustained the scratch marks, and the defendant claimed that the child suffered the scratches while the defendant was bathing him.  On another occasion, the defendant sent the mother a text message with a video recording depicting his moving the child's legs "in some odd motion."  The mother called the defendant and told him "not to do it again."

On October 9, 2012, the defendant and the mother engaged in an argument through text messages concerning the child.  The defendant sent a text message to the mother that the child preferred to be around her and, "it's heartbreaking . . . . [The child] looks like he's never seen me before . . . .  Yeah, he hates me."  The next morning, the mother was at work when she received a text message from the defendant that said, "fuck!!!"  The defendant explained that he was taking a picture of the child when his cell phone fell and bruised the child's ear "a little bit."  The defendant told the mother that the child's ear "looks bad" and that, when she saw it in person, she would "see [his] concern."  The defendant sent a text message to the mother with a photograph, which depicted considerable bruising to the inner and outer portions of the child's left ear.  Several days

later, the mother punched the defendant during an argument over his care of the child.

On the evening of October 23, 2012, the defendant was holding the child in the kitchen while the mother went upstairs to the bedroom. Approximately ten minutes later, the mother came back downstairs where she discovered the defendant holding the child at the bottom of the basement stairs. Although the mother found this unusual, the defendant stated that they would "be up in a minute." After a few minutes had passed, the mother returned to check on them. This time, however, she encountered the defendant holding the child and pacing at the bottom of the basement stairs. The mother immediately noticed "a look of fear in [the defendant's] face" and asked him what had happened. The defendant quickly blurted out that he fell.

As the defendant ascended the basement stairs, the mother noticed that the child appeared injured. The child's eyes were glazed over and partially closed, he was struggling to breathe, and he was not moving. The mother immediately called 911. When the police arrived, the defendant stated that he "fell down the stairs and dropped the baby." Shortly thereafter, the child was transported to the hospital.

The child sustained numerous injuries as a result of the incident, including multiple acute, noncontact subdural hemorrhages, significant brain swelling, loss of brain tissue,

torn bridging veins, retinal hemorrhages in all four quadrants, and retinoschisis.  At the time of trial, the child's retinas had detached resulting in permanent blindness.  He also had limited verbal communication skills and mobility issues.

b.  Trial evidence.  At trial, both parties presented experts regarding how the child's injuries occurred.[1]  The Commonwealth presented expert medical testimony that the child's brain injuries were consistent with acceleration and deceleration forces.  One expert opined that the eye injuries were caused by a "to-and-fro motion" and that the brain injuries were "indicative of a severe traumatic event . . . beyond what you would expect from the regular handling and care of a baby."  She testified that "[r]etinoschisis is associated with more traumatic, more high-energy mechanisms" and that it was "described in a child that fell off of an 11-story building."  Another expert testified that the child sustained the equivalent of "severe crush injuries" typically associated with "a television set falling on a child's eye" or "abusive head trauma."  He had seen such injuries "only . . . in cases of

---

[1] The Commonwealth presented expert testimony from three doctors from Boston Children's Hospital -- the medical director of the hospital's child protection program, a pediatric ophthalmologist, and a pediatric neuroradiologist -- as well as testimony from the chair of biomechanics in the department of bioengineering at the University of Louisville.  The defendant presented expert testimony from a forensic pathologist and a biomedical engineer.

abusive head trauma" and opined that the injuries were inconsistent with a short fall.  A third expert testified that the "acute hemorrhage is consistent with trauma" and that the injuries were inconsistent with a short fall.  The Commonwealth's bioengineer determined that the described fall was "not biomechanically compatible with the constellation of injuries, and the characteristics of injuries that were present on the child."

As to the child's ear injury, an expert for the Commonwealth testified that the child sustained "very extensive bruising" to his entire ear.  Similarly, the child's doctors, who observed the bruise on the day of the injury, testified that they were concerned because the bruise "was a deep purple" and it looked "as if [the ear] had gotten banged."  One of the Commonwealth's experts testified that ear bruising in children is "exquisitely unusual" because it is "one of the places where children just do not characteristically bruise."  Given the location of the bruise, it was "highly concerning for an abusive mechanism."  The Commonwealth's bioengineer determined that dropping a cell phone on a child's ear was "completely incompatible" with the severity of the bruising, and another expert testified that she "wouldn't expect that a modern-day cell phone would cause that injury."

By contrast, the defendant's experts opined that the child's brain and ear injuries were consistent with the defendant's account of events. Concerning the child's brain injury, the defendant's experts testified that the child fell approximately "seven and a-half feet down about four stairs" and that the fall, as described, "could have resulted in [the child's] head injuries." With respect to the child's ear injury, the defendant's experts testified that dropping a cell phone on a child could bruise his ear and that the defendant's explanation was consistent with the ear bruise sustained by the child.

After an eleven-day bench trial, the judge found the defendant guilty of assault and battery on a child causing substantial bodily injury (brain injury) and assault and battery on a child causing bodily injury (ear injury).[2] This appeal followed.

2. Standard of review. "When reviewing the denial of a motion for a required finding of not guilty, 'we consider the evidence introduced at trial in the light most favorable to the Commonwealth, and determine whether a rational trier of fact could have found the essential elements of the crime beyond a

---

[2] The defendant was also tried on an additional charge of assault and battery on a child causing bodily injury (leg fracture), and the judge found him not guilty.

reasonable doubt.'" Commonwealth v. Oliver, 102 Mass. App. Ct. 609, 611 (2023), quoting Commonwealth v. Quinones, 95 Mass. App. Ct. 156, 162 (2019). "[T]he evidence relied on to establish a defendant's guilt may be entirely circumstantial," Commonwealth v. Linton, 456 Mass. 534, 544 (2010), S.C., 483 Mass. 227 (2019), and "[t]he inferences that support a conviction 'need only be reasonable and possible; [they] need not be necessary or inescapable.'" Commonwealth v. Wheeler, 102 Mass. App. Ct. 411, 413 (2023), quoting Commonwealth v. Ross, 92 Mass. App. Ct. 377, 378 (2017). "Because the defendant moved for required findings at the close of the Commonwealth's case and again at the close of all the evidence, '[w]e consider the state of the evidence at the close of the Commonwealth's case to determine whether the defendant's motion should have been granted at that time.'" Commonwealth v. West, 487 Mass. 794, 799 (2021), quoting Commonwealth v. O'Laughlin, 446 Mass. 188, 198 (2006). We then "consider the state of the evidence at the close of all the evidence, to determine whether the Commonwealth's position as to proof deteriorated after it closed its case." Ross, supra at 379, quoting O'Laughlin, supra.

3. Evidence of the defendant's intent. Here, the Commonwealth presented ample evidence for a reasonable trier of fact to find that the child's injuries were intentionally inflicted by the defendant, rather than the result of an

accident. See Commonwealth v. Garcia, 94 Mass. App. Ct. 91, 97 (2018) (sufficient evidence of intent where medical expert testified that "blunt force trauma caused the [victim's] wound"). At trial, the Commonwealth's experts testified that the child's brain injuries were "indicative of a severe traumatic event." See Commonwealth v. Strickland, 87 Mass. App. Ct. 46, 48-49 (2015) (expert testified that victim's severe brain injuries were "of the type 'ordinarily . . . associated with high velocity motor vehicle accidents'" and that "a simple fall down the stairs would not have the force necessary to cause these injuries in a child"). In addition, the Commonwealth's experts testified that ear bruising in children is "exquisitely unusual" and "highly concerning for an abusive mechanism." See id. at 49 (expert testified that "red bruises on the child's body were consistent with blunt force trauma"). The Commonwealth's experts opined that the child's brain injuries were inconsistent with the described fall and that the severity of the bruise was "completely incompatible" with dropping a cell phone on a child's ear. See Commonwealth v. Epps, 474 Mass. 743, 744 (2016) ("Commonwealth's medical expert offered the opinion that injuries of the type and severity suffered by the child could not have been caused by the short falls described by the defendant"). Moreover, the experts testified that the injuries were "indicative of a severe traumatic event" akin to

an eleven-story fall, being hit with a television set, or a severe crush, a description utterly inconsistent with being dropped down the stairs.

To be sure, the defendant presented conflicting expert testimony.  The contrary expert testimony, however, "did not cause the Commonwealth's case to deteriorate, as the [trier of fact was] entitled to discredit that testimony."  Garcia, 94 Mass. App. Ct. at 97.  Accord Commonwealth v. Traylor, 472 Mass. 260, 276 (2015).  A trier of fact is "entitled to reject the testimony and opinions of the defendant's witnesses and instead credit the contrary evidence, including the opinion of the Commonwealth's expert."  Commonwealth v. Chappell, 473 Mass. 191, 208 (2015).  Accordingly, the evidence was sufficient for a reasonable judge to conclude that the defendant intended to inflict the child's injuries.  See Commonwealth v. Millien, 474 Mass. 417, 442 (2016).

4.  Ear bruise as a bodily injury.  Under G. L. c. 265, § 13J (a), the term "bodily injury" is defined as a "substantial impairment of the physical condition including any burn, fracture of any bone, subdural hematoma, injury to any internal organ, any injury which occurs as the result of repeated harm to any bodily function or organ including human skin or any physical condition which substantially imperils a child's health or welfare."  Accord Commonwealth v. LaBrie, 473 Mass. 754, 766

(2016). "A 'substantial impairment of the physical condition' therefore occurs where an injury considerably or significantly compromises the usual functioning of any part of the victim's body." Commonwealth v. Ryan, 93 Mass. App. Ct. 486, 489-490 (2018).[3]

Here, there was insufficient evidence that the child's bruised ear constituted a bodily injury under the statute. Contrast Commonwealth v. Chapman, 433 Mass. 481, 484 (2001) (asphyxiation constituted "bodily injury within the meaning of § 13J [a]"); Ryan, 93 Mass. App. Ct. at 491 (sufficient evidence of bodily injury under nearly identical definition where "[t]he victim's hip injury was severe enough to cause him pain and hamper his mobility for several weeks"). Although the child's ear sustained "very extensive bruising," there was no evidence to suggest that the severity and location of the bruise substantially impaired the child's wellbeing. See Commonwealth v. Sudler, 94 Mass. App. Ct. 150, 155 (2018) (insufficient evidence where there was no testimony "that use of the victim's fingers was hampered for any period of time" and "no evidence of treatment, continued medical care, or any recovery period" was

---

[3] Ryan involved G. L. c. 265, § 13K (b). The definition of "bodily injury" in § 13K (a) is nearly identical to the definition in § 13J (a), except that it omits "any physical condition which substantially imperils a child's health or welfare" and uses "including, but not limited to."

introduced).[4]  Despite the extensive medical testimony at trial, no doctor testified regarding the likely effects of the bruise on the child's bodily functioning or any manner in which the bruise imperiled the child's health or welfare.  The photograph and description of the bruise did not reveal so serious an injury that such an effect would be evident to a lay person.  Similarly, although the Commonwealth presented evidence that the child's ear "was a deep purple" and appeared to have been "banged," there was no evidence to suggest that the bruise was a result of a repeated harm to the child's ear.  To the contrary, there was no evidence of an ear injury at any other time.  Accordingly, under the particular definition of "bodily injury" in G. L. c. 265, § 13J (a), "[w]e cannot infer substantial impairment from such limited evidence without speculating."  Sudler, supra.[5]

---

[4] Sudler involved G. L. c. 265, § 39 (b), which uses a definition of "bodily injury" identical to that in § 13K (a).

[5] The Commonwealth's citations to cases under the aggravated rape statute, G. L. c. 265, § 22 (a), are not particularly helpful.  That statute, in which "serious bodily injury" was added in 1980, St. 1980, c. 459, § 6, contains no definition of "bodily injury," and predates the passage of § 13J by thirteen years.  See St. 1993, c. 340, § 2.  Without a statutory definition, it has been construed broadly.  See, e.g., Commonwealth v. J.G., 100 Mass. App. Ct. 731, 737 (2022), quoting Commonwealth v. Coleman, 30 Mass. App. Ct. 229, 235 (1991) ("'swollen eye, swollen face, and facial bruises' constituted serious bodily injury" under aggravated rape statute).

5.  Conclusion.  The judgment on the indictment charging the defendant with assault and battery on a child causing bodily injury is vacated, and the finding is set aside.  A new judgment of conviction shall enter on so much of the indictment as alleges the lesser included offense of assault and battery, G. L. c. 265, § 13A (a).  The matter is remanded for resentencing.  The judgment on the indictment charging the defendant with assault and battery on a child causing substantial bodily injury is affirmed.

So ordered.