NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-162

COMMONWEALTH

vs.

ALEXANDER HENDERSON.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the Superior Court, the defendant was convicted of trafficking more than thirty-six grams of heroin, in violation of G. L. c. 94C, § 32E (c) (2); and possession with intent to distribute fentanyl, in violation of G. L. c. 94C, § 32A (a). On appeal, he argues that (1) his motion to dismiss the indictments due to allegedly lost evidence should have been allowed, and (2) he is entitled to a new trial on the ground that he was denied the effective assistance of counsel. We affirm.

Background. We summarize the facts the jury could have found reserving additional details for our discussion of the issues. On February 12, 2018, law enforcement officers executed

a search warrant at a residence located on Cobleigh Street in Westwood.  The defendant and two other individuals, Zachary Peloquin and William Richardson, were arrested at the scene. When the police entered the house, they saw the defendant run from his bedroom across the hall and into the bedroom occupied by Peloquin where he hid behind a curtain in a closet.

A container of Clorox wipes was on the floor near the closet.  It had a false bottom in which the police found two plastic bags containing a mixture of heroin and fentanyl with a combined weight of 75.12 grams.  A State police analyst testified that the bags contained the same cutting agents: aminopyrine, caffeine, lidocaine, and noramidopyrine-dipyrone. In the defendant's bedroom, the police found a plastic bag containing 5.07 grams of heroin and fentanyl on a nightstand and a can of baking powder near a window.  The analyst testified that the mixture of the drugs contained the same cutting agents as the other two bags with the exception of lidocaine.  There was no evidence that any of the drugs had been cut with baking powder (sodium bicarbonate).  The police also seized $8,000 in cash from the closet in the defendant's bedroom.  In another closet, located between the defendant's and Peloquin's bedrooms, the police found a blender and a digital scale.

Discussion. 1. Motion to dismiss. During the execution of the search warrant described above, the police tested the

2

various substances they seized using a TruNarc machine.  The test results were inconclusive.  The Commonwealth presented evidence to the grand jury[1] that the test results were inconclusive and provided that information to the defendant during discovery.  However, the Commonwealth was not able to produce underlying documentation in a timely manner because the TruNarc device the police used had malfunctioned and had been returned to the manufacturer, Thermo Scientific.

The defendant filed a motion to dismiss, alleging that exculpatory evidence had been lost or damaged.  A judge, who was not the trial judge, held a hearing during which it came to light that the documentation at issue had been retrieved from the machine by its manufacturer, Thermo Scientific, and was now available for inspection.  Thus, as the motion judge found, the evidence was no longer lost.  Although all the requested documentation was ultimately produced, the judge determined that the defendant "ha[d] been prejudiced to a certain extent," and he ordered that the defendant "be given a wide latitude at trial with respect to eliciting information about the delay in being provided the TruNarc inconclusive tests, the purported reason

---

[1] We acknowledge that the grand jury minutes remain impounded and discuss them only as necessary to resolve this appeal.

3

for the delay as well as inquiry into the chain of custody of the TruNarc tests."

The judge did not err in denying the motion to dismiss. Ultimately, the evidence was not lost and, as the judge explicitly noted, the evidence was not "withheld purposefully." Furthermore, the judge fashioned an effective remedy for the delay in the disclosure of the evidence, which was sufficient to negate any prejudice to the defendant. See Commonwealth v. Moore, 480 Mass. 799, 811 (2018), quoting Commonwealth v. Harwood, 432 Mass. 290, 302 (2000) ("Our courts have [properly] fashioned or upheld various judicial remedies for the loss of evidence").

2. <u>Ineffective assistance of counsel</u>. The defendant's primary defense at trial was that he possessed the drugs found in the home for his personal use and was not guilty of trafficking or intending to distribute heroin and fentanyl. To that end, the defendant attempted to distance himself from evidence that supported the Commonwealth's theory that the search warrant had uncovered a drug distribution scheme in which the defendant participated by preparing the drugs for sale by cutting or diluting them with various agents. In closing argument, defense counsel referred to the can of baking powder found in the defendant's bedroom and asked the jury to look at

4

the drug certificate, which he claimed showed the absence of sodium bicarbonate.  Counsel stated:

> "Look at the drug certificate.  Sodium bicarbonate.  There's no sodium bicarbonate in there.  They want us to believe oh, they're diluting the drugs.  They're making profit.  Mr. Henderson is making profit.  We found the baking powder in his room.  He's guilty.  No.  The drugs don't have sodium bicarbonate in them.  Mr. Peloquin is doing the drugs out of a paper fold, tiny little amount.  That's tested.  There's no sodium bicarbonate in there either."

However, the drug certificate in question had not been introduced in evidence when the analyst testified.[2]  This fact came to light when the jury sent a question to the judge asking if they could see the drug certificate.[3]  Defense counsel told the judge:

> "I said in my closing about the difference in sodium bicarbonate because I [was] acting in good faith belief that [the drug certificate] was [in evidence].  When we look at it, somehow, it's not there.  Somehow, I didn't see

---

[2] The confusion stemmed from the fact that the substances initially were examined in May 2018 by an analyst (Kimberly Dunlap) who was no longer employed by the State police crime laboratory at the time of trial.  The substances were resubmitted for analysis in 2022.  That analysis was conducted by Caroline Tatro, a forensic scientist who was also the drug unit supervisor for the State drug lab located in Springfield.  In 2022, Tatro reweighed the substances and generated a certificate of her report regarding her findings.  She did not conduct any additional analysis or testing to identify the substances, rather she relied upon the original analysis that had been completed in 2018.  The only certificate admitted in evidence was the one prepared by Tatro.

[3] More specifically, the jury asked to "see and review Caroline Tatro's chemical analysis report from 2018 performed by Kimberly Dunlap."

5

it right, read it right, and I missed it, but it's absolutely ineffective assistance of counsel. This is not a strategic decision. This is not a planned intentional decision . . . the jury should have the benefit of the original report."

After some discussion, the judge and the parties listened to the recording of the analyst's testimony. The judge noted that the analyst had listed all the cutting agents detected in the drug mixtures. She had not listed baking powder or sodium bicarbonate as one of them.[4] Defense counsel acknowledged that the jury heard this information "a few times." Because the jury had the information to which defense counsel had referred, albeit "not in written form, but had it in testimonial form," the judge concluded that there was no ineffective assistance of counsel. The judge reasoned:

"It seems to me that [the analyst] did cover all the compounds that were mentioned, both the control substances and the specific names for the dilutants, so I think the jury heard what it needs to hear, and I don't think there's any ineffective assistance issue."

The judge then informed the parties that if the jury asked for it, he was inclined to provide them with the portion of the testimony relating to the presence of cutting agents in the

---

[4] The analyst testified that three items were submitted for analysis. The first two items, found on the defendant's nightstand and in the Clorox container consisted of heroin, fentanyl, acetyl fentanyl, caffeine, aminopyrine, lidocaine, and noramidopyrine-dipyrone. The third item was taken from a bag in Peloquin's room and contained the same substances as the first two, except it did not contain lidocaine.

6

heroin and fentanyl mixtures, but that he would not do so without a request.

The defendant argues, as he did before the trial judge, that his error deprived the defendant of his right to the effective assistance of counsel and, consequently, he is entitled to a new trial. We first address the question whether the defendant's claim can be resolved on direct appeal. A claim of ineffective assistance "may be resolved on direct appeal, as opposed to on a motion for new trial, only where 'the factual basis of the claim appears indisputably on the trial record.'" Commonwealth v. Ryan, 93 Mass. App. Ct. 486, 494 (2018), quoting Commonwealth v. Zinser, 446 Mass. 807, 811 (2006). We have conducted a careful review of the record and conclude that it provides a sufficient basis on which the defendant's claim can be resolved.

We now turn to the merits of the claim. To sustain his burden, the defendant must first show "behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer," and second, "whether it has likely deprived the defendant of an otherwise available, substantial ground of defen[s]e." Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). Even if we were to assume that defense counsel's mistaken belief that the drug certificate (generated by the first analyst) had been admitted in evidence amounts to conduct

7

which satisfies the first requirement under the Saferian test, the defendant has not met his burden of demonstrating that he was likely deprived of an otherwise available defense. To the contrary, as the judge observed, evidence of the absence of sodium bicarbonate in the drugs on which the convictions were based was presented to the jury. And, in response to the jury's question, the judge told the jury that "[t]he Rules of Evidence say that what comes in during the trial, that's the evidence for the jury to consider. . . . I can't supplement the evidence once it's closed. . . . You will need to rely on your memory of any testimony about that 2018 chemical analysis report." We assume, as we must, that the jury followed these instructions. See Commonwealth v. Berry, 466 Mass. 763, 770 (2014). Additionally, in concluding that there was no ineffective assistance of counsel because the result of the trial would not have been different, we have considered the compelling evidence against the defendant. Not only was the quantity of the drugs found in the residence inconsistent with personal use, but the defendant had large amounts of cash ($8,000) in his bedroom closet and other items associated with the distribution of narcotics (a scale, a blender, and "baggies" typically used for packaging drugs for sale) were found in the residence at the time the search warrant was executed. The defendant also attempted to hide when the police entered the home thereby

8

indicating a consciousness of guilt.  In sum, the record does not support the defendant's claim that he was deprived of the effective assistance of counsel.

<u>Judgments affirmed</u>.

By the Court (Vuono,
  Brennan & D'Angelo, JJ.[5]),

Clerk

Entered:  April 10, 2025.

---

[5] The panelists are listed in order of seniority.