NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-913

COMMONWEALTH

vs.

THEODORE HANCOCK, JR.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury trial in the District Court, the defendant,

Theodore Hancock, Jr., was convicted of malicious destruction of

property valued at $1,200 or less, G. L. c. 266, § 127; larceny

of property valued at $1,200 or less, G. L. c. 266, § 30; and

assault and battery on a family or household member, G. L.

c. 265, § 13M.  The defendant appeals, arguing that the

Commonwealth did not prove that he maliciously intended to

damage property, and that a substantial risk of a miscarriage of

justice arose from two aspects of the jury instructions.  As to

the larceny count, the defendant argues that the judge should

have instructed the jury to consider whether he had a mistaken

belief that the cell phone he took was his own.  As to the count

for the assault and battery on a family or household member, the defendant contends that the judge omitted one of the statutory factors for determining whether a substantive dating relationship existed.  We affirm.

Background.  The defendant and the victim were in a romantic relationship for about one year, during which the defendant lived with the victim and her children.  In early March 2023, the defendant and victim broke up; the defendant began moving out, but left behind boxes of his belongings and a television.  The victim took back the defendant's key to her apartment.

One week after the breakup, on the evening of March 12, 2023, the victim's apartment buzzer rang.  Because the victim was not expecting anyone, but "had a feeling" that it might be the defendant, she did not answer the buzzer and instructed her children not to answer it.  The buzzer rang several more times over a period of a couple of minutes.  The victim sent her children to their bedrooms while she sat in her living room.  Thereafter, the victim received a text message from the defendant asking if she was at home, to which she replied, "Yes, I am home.  Please leave me alone. My children are here."  The door to the apartment was locked, the deadbolt was on, and a chair was wedged under the doorknob.

2

After gaining access to the building, the defendant kept trying to open the victim's apartment's front door. The defendant said he was there to get his television. The victim replied she would bring the television to him the next day, but that her children were home, so she did not want him there. Suddenly, the defendant kicked in the apartment door, damaging the door frame and knocking over the chair. The defendant walked into the living room, picked up his television, and left the apartment building.

The victim took the boxes of the defendant's belongings and put them in the hallway outside her apartment. She found the defendant's cell phone and put it inside one of the boxes. A short time later, the defendant regained access to the building and came back into the victim's apartment. He said he was looking for his cell phone and looked around the living room for it. The victim told him that all of his belongings were outside the apartment and that he should take them and leave. After the defendant refused to do so, the victim began video-recording him on her cell phone. The victim yelled that she did not have the defendant's cell phone, told him to get out of her apartment, and accused him of breaking down her door. The defendant asked the victim to call his cell phone, which she refused to do. He took the victim's cell phone out of her hands and held it up out

3

of her reach.  Then the defendant left the apartment with the victim's cell phone.

The victim followed the defendant into the hallway and downstairs to the ground floor, trying to grab her cell phone. The defendant grabbed the victim's arms, "slammed" her to the ground, and placed his hand around her neck.  The defendant then left with the victim's cell phone.  Later that night, the police arrested the defendant, retrieved the victim's cell phone, and returned it to her.

On the counts on which he was later convicted, the defendant moved for a required finding of not guilty, which the judge denied.[1]  On a count alleging larceny from the person, the jury convicted the defendant of the lesser-included offense of larceny of property valued at $1,200 or less; the jury also convicted the defendant of malicious destruction of property valued at $1,200 or less, and assault and battery on a family or household member.  The defendant appeals.

Discussion.  1.  Sufficiency of evidence of malicious intent to damage property.  The defendant argues that the Commonwealth failed to prove that he had a malicious intent when he damaged the victim's apartment's door frame, and so the judge

---

[1] The judge allowed a required finding of not guilty as to a count alleging breaking and entering with intent to commit a felony.  No issue is before us pertaining to that count.

4

erred by denying his motion for a required finding of not guilty.

We review the sufficiency of the evidence to determine "whether, after viewing the evidence in the light most favorable to the [Commonwealth], any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (citation omitted). Commonwealth v. Latimore, 378 Mass. 671, 677 (1979). For malicious destruction of property, "the Commonwealth must prove that the act was done . . . in 'a state of mind of cruelty, hostility or revenge'" (citation omitted). Commonwealth v. Chambers, 90 Mass. App. Ct. 137, 143 (2016). See Commonwealth v. Lounge, 87 Mass. App. Ct. 906, 908 (2015). The defendant asserts that he "was motivated solely by his desire to retrieve his television from [the victim]'s apartment." In his view, his breaking down the door was simply "a means to that end." Commonwealth v. Redmond, 53 Mass. App. Ct. 1, 4 (2001) (evidence did not prove that damage to door during burglary "was more than a means to that end"). See Commonwealth v. Woods, 94 Mass. App. Ct. 761, 769 (2019) (where defendant broke down neighbor's door while trying to hide from police, "[t]here is no evidence that the defendant was motivated by animus or hostility . . . his destruction of her door was . . . an incidental consequence").

5

Viewed in the light most favorable to the Commonwealth, the evidence was sufficient for a rational juror to conclude that the defendant's breaking down the victim's apartment door was more than an "incidental consequence" of retrieving his television. Woods, 94 Mass. App. Ct. at 769. See Commonwealth v. Gordon, 82 Mass. App. Ct. 227, 233 (2012) (evidence sufficient that destruction of property "was not incidental to some other venture or purpose" despite defendant's lack of hostility toward owners and stated purpose of releasing rage). The defendant kicked in the door knowing that the victim and her children were inside. He did so after the victim denied him access to her apartment, asked him to leave, and offered to bring the television to him the next day. "The property injury here . . . could be viewed by the jury as going well beyond the incidental." Commonwealth v. Wynn, 42 Mass. App. Ct. 452, 456 (1997). The evidence supported an inference that the defendant acted out of "cruelty, revenge, or hostility." Lounge, 87 Mass. App. Ct. at 908.

2. Jury instructions. The defendant argues that the judge's charge to the jury should have included an honest but mistaken belief instruction, and improperly omitted one of the factors the jury could consider in determining the existence of a substantive dating relationship. Because the defendant did not object on either ground at trial, we review each claim for

"a substantial risk of a miscarriage of justice." See Commonwealth v. Marinho, 464 Mass. 115, 122 (2013).

a. Honest but mistaken belief. As to the larceny count, the defendant contends that the trial evidence adequately established that he took the victim's cell phone because he thought it was his own, and so the judge was required to instruct on a defense of honest and reasonable, but mistaken, belief or claim. See Commonwealth v. Vives, 447 Mass. 537, 542 (2006). See also Commonwealth v. Liebenow, 470 Mass. 151, 161-162 & n.15 (2014). He argues that his trial lawyer was ineffective for not having requested such an instruction.

To raise a defense of honest but mistaken belief, the defendant was required, before trial, to notify the Commonwealth and the court of his intent to do so pursuant to Mass. R. Crim. P. 14 (b) (3), as appearing in 442 Mass. 1518 (2004). See Vives, 447 Mass. at 542 n.4; Commonwealth v. Ryan, 93 Mass. App. Ct. 486, 492 (2018). The defendant failed to give that notice, and so the defense was not available to him.

"In any event, even assuming the defendant adequately raised the defense, the Commonwealth provided sufficient evidence to disprove it." Ryan, 93 Mass. App. Ct. at 492. The victim's and the defendant's cell phones were made by different manufacturers, reducing the likelihood that one could be mistaken for the other. The video recording that the victim

7

made with her cell phone contains no statement by the defendant that he thought that the cell phone the victim was holding was his own. Indeed, in the video recording the defendant can be heard repeatedly demanding that the victim call his lost cell phone; that showed that he believed that the cell phone she was holding was her own and not his. "A rational jury could have rejected the defendant's claim of honest belief based on this evidence." Ryan, supra at 493.

For the first time on appeal, the defendant argues that trial counsel was ineffective for failing to request an honest but mistaken belief instruction. We may resolve an ineffective assistance claim on direct appeal only if "the factual basis of the claim appears indisputably on the trial record." Commonwealth v. Adamides, 37 Mass. App. Ct. 339, 344 (1994). "[A]n ineffective assistance of counsel challenge made on the trial record alone is the weakest form of such a challenge because it is bereft of any explanation by trial counsel for his actions and suggestive of strategy contrived by a defendant viewing the case with hindsight" (citation and quotation omitted). Commonwealth v. Zinser, 446 Mass. 807, 810-811 (2006). At trial, defense counsel argued that the defendant lacked the intent to permanently deprive the victim of her cell phone. For counsel to have simultaneously pursued an inconsistent defense that the defendant believed the victim's

8

cell phone was his own would have undermined that strategy. Based on the record before us, we cannot conclude that trial counsel's conduct fell below the standard of Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).

b. Factors for determining substantive dating relationship. On the assault and battery count, the judge instructed that the definition of family or household member included persons who have been in a substantive dating relationship. The defendant argues that a substantial risk of a miscarriage of justice arose because the instruction on determining proof of a substantive dating relationship omitted one of the statutory factors, "whether the relationship was terminated by either person," G. L. c. 265, § 13M, as amended through St. 2014, c. 260, § 23.[2]

Paraphrasing the Criminal Model Jury Instructions for Use in the District Court 6.275 (2019), the judge instructed the

---

[2] That statute provides:

"the trier of fact shall determine whether a relationship is substantive by considering the following factors: the length of time of the relationship; the type of relationship; the frequency of interaction between the parties; whether the relationship was terminated by either person; and the length of time elapsed since the termination of the relationship" (emphasis added).

G. L. c. 265, § 13M, as amended through St. 2014, c. 260, § 23.

9

jury on the "family or household member" element of G. L. c. 265, § 13M as follows:

"[T]wo persons are family or household members if . . . they are or <u>have been</u> in a substantive dating or engaging[3] relationship which requires consideration of the length of the time of the relationship, the type of relationship, the frequency of interaction between the defendant and [the victim], <u>and the length of time that has elapsed since the termination of the relationship</u>."  (Emphases added.)

The defendant did not object.

During deliberations, the jury asked:  "Does their relationship still count as serious as defined by the law after being broken up with?"  Questioned by the judge about how he should respond, defense counsel said, "Judge, I think you gave the definition in your instructions. . . .  And I guess I would just suggest that they go back to that description."  The judge then re-read his prior instruction for both counsel, and defense counsel said she was content with that instruction.  For the jury, the judge repeated his earlier instruction, again including the phrase "are or have been in a substantive dating . . . relationship," but omitting the phrase "whether the relationship was terminated by either person."  About thirty minutes later, the jury returned with a guilty verdict.

---

[3] The defendant does not argue that he was prejudiced by the judge's use of the word "engaging" instead of "engagement," G. L. c. 265, § 13M, and so we do not consider the issue.

10

We conclude that no substantial risk of a miscarriage of justice arose from omission of the phrase "whether the relationship was terminated by either person," G. L. c. 265, § 13M (c) (iii), from the instruction on the factors to be considered by the jury in determining whether the relationship was substantive. Section 13M directs that the trier of fact "shall determine" whether a relationship is substantive "by considering" factors including whether the relationship has been terminated. Those factors "are not themselves elements of the offense," and "[t]here does not need to be evidence as to each factor." Commonwealth v. Dustin, 476 Mass. 1003, 1006 n.7 (2016).

In 2014, the Legislature amended § 13M by rephrasing the substantive dating relationship factors to state, "whether the relationship was terminated by either person; and the length of time elapsed since the termination of the relationship," treating as two separate factors the termination of the relationship and the length of time elapsed since.[4] The defendant argues that the 2014 amendment to § 13M shows that the Legislature intended termination of the relationship to be "a

---

[4] Prior to the 2014 amendment, § 13M stated, "if the relationship has been terminated by either person, the length of time that has elapsed since the termination of the relationship." St. 2008, c. 534, § 1. That was identical to the language of G. L. c. 209A, § 1 (e).

11

mandatory factor" for the jury's consideration. The argument is unavailing, because the Supreme Judicial Court has ruled that each factor is not mandatory. See Dustin, 476 Mass. at 1006 n.7. The defendant's reading of the statute would mean that once a relationship was terminated, it could no longer meet the definition of a substantive dating relationship. That interpretation would contradict the part of the statute defining family or household members as persons who "are or have been" in a substantive relationship. We will not interpret the statute so that one part contradicts another. See Commonwealth v. Rainey, 491 Mass. 632, 642 (2023) ("[w]e will not adopt a literal construction of a statute if the consequences of such a construction are absurd or unreasonable" [citations and quotations omitted]). Cf. Scione v. Commonwealth, 481 Mass. 225, 238 (2019) (where defendant and victim dated for four years but broke up six years prior to incident involving explosive device, defendant was family or household member as defined by c. 209A); Commonwealth v. Gordon, 407 Mass. 340, 347 (1990) (rejecting defendant's interpretation of prior version of G. L. c. 209A, § 7, positing that "vacate" did not mean "remain away").

Moreover, any ambiguity raised by omission of that language from the jury charge was dispelled by the jury's question and the judge's response to it. See Commonwealth v. King, 23 Mass.

12

App. Ct. 88, 91 (1986).  The judge's instruction that family or household members included persons who "are or have been in a substantive dating . . . relationship" (emphasis added) made clear that § 13M may apply to persons whose relationship has ended.  Evaluating the jury charge as a whole and interpreting the words as would a reasonable juror, see Marinho, 464 Mass. at 122, we are satisfied that the instructions conveyed the legal concept of a "substantive dating relationship."  The instruction did not direct the jury to consider any improper factor.  Contrast C.O. v. M.M., 442 Mass. 648, 655 (2004) (in finding substantive dating relationship, G. L. c. 209A, § 1, judge improperly considered age of plaintiff and fact that criminal complaint had issued, which were not statutory factors).

Judgments affirmed.

By the Court (Desmond, Grant & Hodgens, JJ.[5]),

Clerk

Entered:  May 16, 2025.

---

[5] The panelists are listed in order of seniority.